OPINION
KETHLEDGE, Circuit Judge.
The statute that governs an issue is usually the one to rely upon in arguing it. Here, the parties agree that the Medicare statute governs the extent to which Vernon Hadden is obligated to reimburse Medicare for certain expenses that it paid on his behalf. Most of Hadden’s arguments, however, concern different statutes with different language than the Medicare provision that applies here. The district court thought those arguments were beside the point. So do we; and we otherwise think that the Medicare statute itself requires Hadden to reimburse Medicare to the full extent that the government advocates. We therefore affirm the judgment of the district court.
I.
In August 2004, Hadden was standing near a traffic circle in Kentucky when he was struck by a vehicle owned by Penny-rile Rural Electric Cooperative Corporation. His medical bills totaled $82,036.17. Medicare paid his bills in full, because Hadden is a Medicare beneficiary. Had-den later sued Pennyrile, demanding compensation for all of his medical expenses, among other damages. Pennyrile eventually paid Hadden $125,000 in exchange for a full release of his claims against it.
What happened next is the subject of this appeal. Federal law aims to make Medicare only a “secondary payer” as to medical expenses for which some other entity (e.g., a tortfeasor) bears responsibility. See 42 U.S.C. § 1395y(b)(2). Medicare paid Hadden’s expenses nonetheless, pursuant to a provision that allows it to do so if the responsible entity might not pay the expenses “promptly[J” Id. § 1395y(b)(2)(B)(i). But that same provision gives Medicare the right to seek “reimbursement” from the responsible entity or the beneficiary, if the beneficiary himself later receives a payment directly from the responsible entity. Id. § 1395y(b)(2)(B)(ii), (iii). That is what happened here: Pennyrile made a $125,000 settlement payment to Hadden, so Medicare circled back to him and demanded reimbursement for its earlier payment of his medical expenses. After subtracting a portion of the attorneys’ fees that Hadden himself had paid to obtain the settlement, see 42 C.F.R. § 411.37, Medicare determined that Hadden owed it $62,338.07.
That amount was likely no surprise to Hadden, since he had escrowed exactly $62,000 of his settlement money for the specific purpose of reimbursing Medicare. But he paid the $62,338.07 (plus some interest) under protest nonetheless, arguing *301 that he should be required to reimburse Medicare for only 10% — or about $8,000— of the more than $80,000 of expenses that Medicare paid on his behalf. According to Hadden, the accident in which he was injured was primarily the fault of an unidentified motorist who had caused the Pennyrile truck to swerve into him; that motorist was responsible for 90% of Had-den’s damages, with Pennyrile responsible for only 10%; and thus Pennyrile’s payment of $125,000 represented only 10% of Hadden’s total damages, meaning that it only compensated him for 10% of his medical expenses, or about $8,000. The remaining $117,000 or so of the settlement, Hadden says, compensated him for damages other than medical expenses (e.g., pain and suffering) — and was therefore off-limits to Medicare.
An administrative law judge took a dim view of this theory, finding that the plain language of the Medicare statute required Hadden to reimburse Medicare the full amount that Medicare had demanded. The ALJ also found that the reimbursement was not against “equity and good conscience.” See 42 U.S.C. § 1395gg(c). The Medicare Appeals Council agreed with each of those findings. Hadden appealed this decision to the district court, which remanded the case back to the Appeals Council. The Appeals Council issued an amended decision in which it again agreed with the ALJ’s findings. The district court agreed with them as well.
This appeal followed.
II.
We review de novo the district court’s dismissal of Hadden’s petition. Ealy v. Comm’r of Soc. Sec., 594 F.3d 504, 512 (6th Cir.2010). In addition, because our decision here involves interpretation of a statute administered by a federal agency, we review the agency’s interpretation under the Chevron standard. Under that standard, if “Congress has directly spoken to the precise question at issue” in the text of the statute, we give effect to Congress’s answer without regard to any divergent answers offered by the agency or anyone else. Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). But “if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency’s answer is based on a permissible construction of the statute.” Id. at 843, 104 S.Ct. 2778.
The parties agree that Pennyrile’s settlement payment to Hadden gives rise to an obligation on his part to reimburse Medicare. But they dispute whether that obligation is limited to the $8,000 that Hadden says represented payment for his medical expenses.
The relevant section of the Medicare statute provides:
(2) Medicare secondary payer
(B) Repayment required
(ii) Primary plans
A primary plan, and an entity that receives payment from a primary plan, shall reimburse the appropriate Trust Fund for any payment made by the Secretary under this subchapter with respect to an item or service if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service ....
42 U.S.C. § 1395y(b)(2)(B)(ii) (emphasis added).
This subsection has additional relevant language, but we consider the quoted portion first. It is undisputed that Pennyrile is a “primary plan” and that Hadden is an *302 “entity that receive[d] payment from a primary plan” within the meaning of this provision. It is also undisputed that Medicare paid for $82,036.17 of medical services rendered to Hadden. Thus, under the quoted language, Hadden “shall reimburse” Medicare to the same extent that Pennyrile “had a responsibility to make payment” with respect to those services.
The key term here is “responsibility,” since Hadden’s obligation to reimburse Medicare for its payment of his medical expenses is coextensive with Pennyrile’s responsibility to pay them. Hadden’s argument, of course, is that (according to him) Pennyrile “had a responsibility to make payment” for only 10% of his medical expenses — i.e., only $8,000 of them— and that his reimbursement obligation is thus limited to the same extent. The Ninth Circuit encountered an identical argument back in 1995 and concluded that § 1395y(b)(2)(B) was silent as to whether the argument was correct. See Zinman v. Shalala, 67 F.3d 841, 845 (9th Cir.1995). Hence the court turned to the agency’s interpretation of the statute, under which Medicare was “entitled to full reimbursement of conditional Medicare payments when a beneficiary receives a discounted settlement from a third party.” Id. at 846. The court easily found this interpretation to be reasonable, and thus deferred to it under Chevron. Id.
In the meantime, Congress has directly spoken to this issue — in a way highly unfavorable to Hadden. In 2003, Congress amended § 1395y(b)(2)(B)(ii) to add the language in italics below:
A primary plan, and an entity that receives payment from a primary plan, shall reimburse the appropriate Trust Fund for any payment made by the Secretary under this subchapter with respect to an item or service if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service. A primary plan’s responsibility for such payment may be demonstrated by a judgment, a payment conditioned upon the recipient’s compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan’s insured, or by other means.
Id. (emphasis added).
The italicized language leaves no room for Hadden’s argument in this appeal. As used in § 1395y(b)(2)(B)(ii), “responsibility” is no longer an undefined term into which courts might funnel their own notions (or Hadden’s) of equitable apportionment. It is instead a term of art, which defines several ways in which a primary plan’s “responsibility” can be demonstrated for purposes of this section. We address only one of them here: specifically, under § 1395y(b)(2)(B)(ii) as amended, if a beneficiary makes a “claim against [a] primary plan[,]” and later receives a “payment” from the plan in return for a “release” as to that claim, then the plan is deemed “responsible]” for payment of the “items or services included in” the claim. Id. Consequently, the scope of the plan’s “responsibility” for the beneficiary’s medical expenses — and thus of his own obligation to reimburse Medicare — is ultimately defined by the scope of his own claim against the third party. That is true even if the beneficiary later “compromise^” as to the amount owed on the claim, and even if the third party never admits liability. And thus a beneficiary cannot tell a third party that it is responsible for all of his medical expenses, on the one hand, and later tell Medicare that the same party was responsible for only 10% of them, on the other.
*303 That is precisely what Hadden attempts to do here. In his claim against Pennyrile, he did not demand that it pay for only 10% of the medical expenses that he incurred as a result of his accident; he demanded that it pay for all of them. That choice has consequences-one of which is that Hadden must reimburse Medicare for those same expenses. (To respond briefly to the dissent: Section 1395y(b)(2)(B)(v) affords the Secretary broad discretion to waive Medicare’s right of recovery to the extent she sees fit in a particular ease.)
Hadden tries to avoid this conclusion by making arguments about statutes other than the one that applies here. Specifically, he says that, under the Medical Care Recovery Act, 42 U.S.C. § 2651(a), and the Medicaid statute, id. § 1396a(a)(25) — both of which are undisputedly inapposite — “the government is entitled to recover only its proportionate share of a discounted settlement.” Hadden Br. at 13. And he argues at considerable length that there is “no principled reason” not to apply the same limitation to the government’s right to reimbursement under the Medicare statute. Id. at 18. So, in his view, we should treat all of the statutes the same.
The argument seriously misconceives our role in this case. Hadden seems to regard statutes merely as starting points, from which the courts then develop what he calls “federal common law.” Reply Br. at 14. But our task in this case is not to fashion a sort of judicial string theory, under which we develop universal principles that harmonize different statutes with different language. Our task instead is to apply the words of the statute at hand. Of course, if two statutes use the same words in related contexts, the caselaw for one statute might be relevant in construing the other. But the question whether, as a policy matter, there is a principled reason to treat Medicaid beneficiaries differently from Medicare ones, is for Congress to decide. What matters for us is that the words that Congress used in the Medicare statute are materially different from the words it used in the other statutes that Hadden cites; and that is principled reason enough to interpret them differently.
The same fallacy underlies Hadden’s reliance on the Supreme Court’s decision in Arkansas Department of Health and Human Services v. Ahlborn, 547 U.S. 268, 126 S.Ct. 1752, 164 L.Ed.2d 459 (2006). Ahlbom applied the Medicaid statute to strike down an Arkansas statute that automatically imposed a lien in favor of the state upon settlement payments to Medicaid beneficiaries. Id. at 292, 126 S.Ct. 1752. Hadden asserts that the Court’s decision “is grounded in federal law” — with that much we agree — and that the case “stands for the base proposition that a governmental payer is not entitled to recover the full amount of its payments if the beneficiary must settle for less than his or her total damages.” Hadden Br. at 23. Stated at that level of generality, we disagree. The Supreme Court did not divine principles of universal application in Ahlbom. What it did, rather, was interpret the language of the Medicaid statute. That language limits the state’s right (actually it is the state’s obligation) to seek reimbursement from settlement proceeds paid to a Medicaid beneficiary. See id. at 284-85, 126 S.Ct. 1752. The relevant limitation is that the state can seek reimbursement to the extent the settlement payor has “legal liability ... to pay for care and services available under the plan[.]” 42 U.S.C. §§ 1396k(a)(l)(A), 1396a(a)(25)(A). So “liability” was the critical term there; and the Court construed it to mean that the state was limited to the portion of the settlement that, per the stipulation of the settling parties, represented compensation for medical expenses. 547 U.S. at 280-81, 126 S.Ct. 1752. That is a natural reading *304 of the term “liability,” which indeed has a reasonably precise meaning in the law generally. In contrast, the critical term here is “responsibility” — which does not have a precise meaning in the law generally, though one might expect its meaning to be broader than that of “liability.”
But the compelling point is that Congress specifically defined the term “responsibility” in the 2003 amendments to § 1395y(b)(2)(B)(ii). It is that definition, and not the Supreme Court’s construction of a different term in a different statute in Ahlbom, that we are bound to apply in this appeal. And under the 2003 definition of “responsibility,” Hadden was obligated to reimburse Medicare the full amount that it demanded of him. (The same kind of reasoning disposes of Hadden’s argument that our interpretation of the Medicare statute in this case is controlled by our interpretation of the Medical Care Recovery Act in Cockerham v. Garvin, 768 F.2d 784 (6th Cir.1985).)
Hadden’s next argument is that the only means by which the government can enforce its right to reimbursement under § 1395y(b)(2)(B)(ii) is to bring an action under § 1395y(b)(2)(B)(iv). The latter is a subrogation provision, which Hadden says is limited by “general subrogation principles,” among which his Zelig-like principle of proportionate recovery makes yet another appearance. But the argument’s premise is incorrect. Clause (iv) is not the only means by which the government can enforce its reimbursement rights under clause (ii). To the contrary, the government is plainly entitled to enforce those rights under clause (iii). That section provides in relevant part: “[T]he United States may recover under this clause from any entity that has received payment from a primary plan[.]” 42 U.S.C. § 1395y(b) (2) (B) (iii). Hadden is undisputedly such an “entity.” The government is therefore entitled to recover against Had-den under clause (iii), “separate and distinct” from its rights of subrogation under clause (iv). Zinman, 67 F.3d at 844-45; see also Mathis v. Leavitt, 554 F.3d 731, 733 (8th Cir.2009) (“Medicare’s right to reimbursement and [ ] Medicare’s subrogation rights.... are distinct and independent of each other”). Thus, Medicare’s right to reimbursement in this case is not encumbered by any of the subrogation baggage that might (or might not) weigh down an action under clause (iv).
Finally, Hadden argues that the government was required to waive Had-den’s reimbursement obligation, or at least all but $8,000 of it, on the ground that reimbursement here is “against equity and good conscience.” 42 U.S.C. § 1395gg(c). In support, Hadden contends that the agency considered too narrow a range of factors and that its consideration of even those factors was “robotic.” Hadden Br. at 38. The latter characterization is simply unfair — the Appeals Council gave a careful, reasoned explanation for why a waiver of reimbursement was not warranted here — and the former characterization is inaccurate. In its August 2008 decision, the Council considered a significantly broader range of factors than Hadden lets on in his brief. Those included some open-ended ones, such as “[t]he degree to which recovery or adjustment would cause undue hardship for the beneficiary[.]” Appeals Council Op. at 14 (citing the Medicare Secondary Payer Manual, ch. 7, § 50.6.5.2). Hadden’s basic problem was that he presented little or no evidence of hardship as a result of the reimbursement, and that he otherwise retained almost $44,000 of the settlement proceeds after reimbursing Medicare. Suffice it to say that we have no basis to disturb the agency’s determina *305 tion in this regard. See 42 U.S.C. § 405(g).
The district court’s judgment is affirmed.