RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0072p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

―――――――――――

TERESA PREWETT, Mother of minor and next friend
of J.W.; J.W.,

                *Plaintiffs-Appellees*,

    *v.*

STANLEY WEEMS,

                *Defendant-Appellant*.

No. 12-6489

Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville
No. 2:11-cv-00290—J. Ronnie Greer, District Judge.

Decided and Filed: April 14, 2014

Before: MERRITT, SUTTON and STRANCH, Circuit Judges.

―――――――――――

**COUNSEL**

**ON BRIEF:** Jessica Chambers McAfee, Greeneville, Tennessee, for Appellant. Duncan Cates Cave, Greeneville, Tennessee, for Appellee. Sonja Ralston, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Amicus Curiae.

―――――――――――

**OPINION**

―――――――――――

SUTTON, Circuit Judge. Stanley Weems pleaded guilty to one count of producing child pornography. *See* 18 U.S.C. § 2251(a). His victim, J.W., filed this civil action against Weems to obtain compensation for the abuse. *See id.* § 2255(a). The district court awarded $1 million, a figure reached by multiplying the presumed-damages floor in the civil-remedies statute

1

($150,000) by the number of videos Weems produced (seven) and by capping the damages at the relief sought in J.W.'s complaint ($1 million).  This accounting raises an interesting question: Does the civil-remedies statute set a presumptive floor of $150,000 for each criminal *violation* or a presumptive floor of $150,000 for each *cause of action* without regard to the number of alleged violations?  As we see it, the text, structure and context of the statute, together with the structure of related civil-remedy laws, establish that the $150,000 figure creates a damages floor for a victim's cause of action, not for each violation.  We therefore reverse the district court's contrary conclusion.

## I.

From 2007 until 2011, J.W., then a minor, spent time with Weems at his Tennessee home.  While there, J.W. frequently had sex with prostitutes hired by Weems.  Weems apparently got a kick out of watching the encounters and filming them.

In July 2011, J.W. told the police what had happened.  The police searched Weems' home, where they found a cellular phone containing seven videos of J.W. having sex with the prostitutes as well as some audio tapes recording the voices of Weems, J.W. and various prostitutes.  In a three-count indictment, the government charged Weems with producing, possessing and persuading a minor to create child pornography.  Weems pleaded guilty to the production count, and the district court sentenced him to 180 months.

Soon after the government filed these charges, J.W. filed an action of his own.  Invoking 18 U.S.C. § 2255, he sought $1 million in damages for his injuries.  He offered some proof of harm—the affidavits of two psychologists identifying the impact of the abuse and describing the likely future treatment needed to recover from it.  But he never attempted to prove the extent of his actual damages.  He instead relied on the presumptive damages created by the statute ($150,000) and requested that the district court multiply the damages floor by the number of times Weems violated the criminal statute.  Over Weems' objection, the district court adopted J.W.'s theory of recovery.  It concluded that Weems violated the criminal production statute seven times—one violation for each video found on his cellular telephone—multiplied the $150,000 presumed-damages floor in the statute by seven, and reduced the total ($1,050,000) to reflect the $1 million award requested in J.W.'s complaint.

II.

Before considering the merits of this challenge, we pause to address whether Weems filed an untimely notice of appeal, depriving us of jurisdiction over the case. J.W. reasons that the thirty-day clock for filing an appeal began running the minute the district court issued an opinion on his motion for summary judgment, even though the district court did not enter final judgment against Weems for another month. If the filing deadline ran from the date of the district court's opinion, as opposed to the date of judgment, this notice of appeal indeed would be untimely. But that is not how it works. Rule 4 of the Federal Rules of Appellate Procedure starts the clock upon "entry of the judgment" which, in the case of summary judgment (with an exception not applicable here), requires an order "set forth on a separate document." Fed. R. App. P. 4(a)(1), (7); *see also* Fed. R. Civ. P. 58. Weems filed his notice of appeal fourteen days after the district court entered judgment against him in a separate document, making his appeal timely under Rule 4. *See Rubin v. Schottenstein, Zox & Dunn*, 110 F.3d 1247, 1250–53 (6th Cir. 1997), *overruled on other grounds*, 143 F.3d 263 (6th Cir. 1998) (en banc); *see also United States v. Indrelunas*, 411 U.S. 216 (1973).

III.

Enacted as part of the Child Abuse Victims' Rights Act of 1986, § 2255 empowers victims of child sexual abuse to recover money for the harms caused by their abusers. *See* 100 Stat. 1783, § 703(a) (1986); 18 U.S.C. § 2255. The relevant subsection reads in relevant part:

> Any person who, while a minor, was a victim of a violation of section . . . 2251 [among others] . . . and who suffers personal injury as a result of such violation . . . may sue in any appropriate United States District Court and shall recover the actual damages such person sustains and the cost of the suit, including a reasonable attorney's fee. Any person as described in the preceding sentence shall be deemed to have sustained damages of no less than $150,000 in value.

18 U.S.C. § 2255(a). Under the statute, the victim must establish a liability predicate for the award and a damages predicate for the award. As for liability, the victim must show that his abuser violated a qualifying criminal statute. *Id.*; *see also Doe v. Boland*, 698 F.3d 877, 880–82 (6th Cir. 2012). As for damages, the victim may recover either actual damages or presumed damages in an amount "no less than $150,000 in value." 18 U.S.C. § 2255(a).

Weems claims that the district court erred on each front:  (1) on liability, by holding that he violated a qualifying criminal statute seven times even though just one conviction arose from his conduct, and (2) on damages, by holding that the statute bestows a minimum $150,000 award for each violation as opposed to each cause of action.

*Liability*.  The first question turns on the meaning of "violation" in § 2255.  If a violation requires a criminal conviction, Weems may be held civilly liable only for a single violation, as he was convicted of just one qualifying child-abuse crime.  But if a violation requires only proof by a preponderance of the evidence that the defendant engaged in prohibited conduct, Weems may be held liable for as many qualifying violations as J.W. proved in his civil case—here seven.

The district court ruled that violations do not require convictions.  On the asset side of that decision are three considerations.  *First*, the customary meaning of violation tends toward the broad (any failure to conform to a legal standard) rather than the narrow (a criminal conviction).  *See, e.g.*, Oxford English Dictionary Online (3d ed. 2012) ("Infringement or breach, flagrant disregard or non-observance of some principle or standard of conduct or procedure, as an oath, promise, law, etc.; an instance of this."); Black's Law Dictionary (9th ed. 2009) ("An infraction or breach of the law; a transgression . . . [or t]he act of breaking or dishonoring the law; the contravention of a right or duty."); Webster's Second Int'l Dictionary 2846 (1953) ("Infringement; transgression; non-observance; as, the *violation* of law, covenants, promises, etc.").

*Second*, terms are known by the company they keep, *United States v. Shultz*, 733 F.3d 616, 622 (6th Cir. 2013), and the neighboring provisions of § 2255 use "violation" and "conviction" distinctively, suggesting that the different words have different meanings.  Section 2255 applies when a victim shows a "*violation*" of the relevant criminal provisions, but the related criminal-forfeiture statute applies only when the government shows the defendant was "*convicted* of an offense." *Compare* 18 U.S.C. § 2253, *with* 18 U.S.C. § 2255 (emphases added).  In the context of setting sentencing minimums and maximums, the criminal provisions differentiate between the "violat[ion] or attempt[] or conspir[acy] to violate" the statute that the government must prove in the criminal case and any "prior conviction[s]" already adjudicated that the district court must consider in sentencing the individual.  *See, e.g.*, 18 U.S.C. § 2252(b).

Distinct uses of "violation" and "conviction" throughout these related statutes undermine the idea that the two words mean the same thing.

*Third*, precedent favors this interpretation. Addressing RICO's civil-remedies provision, which also contains a "violation" requirement, the Supreme Court held that the statute's language gave "no obvious indication that a civil action can proceed only after a criminal conviction." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 488 (1985). The Court reasoned that "the term 'violation' does not imply a criminal conviction . . . [but rather] refers only to a failure to adhere to legal requirements." *Id.* at 489. Noting that other sections of RICO, including the criminal-forfeiture provision and the sentencing-enhancement subsections, employed the term "conviction" rather than "violation," the Court concluded that the two words captured different meanings. *Id.* at 489 & n.7. Taken together, these considerations prompted the Court to conclude that "the predicate acts" required for civil liability need not "be established beyond a reasonable doubt." *Id.* at 491. Just so here.

On the debit side of this interpretation is one consideration—that it will be more burdensome to show violations than convictions. True enough. As this case well shows, there is nothing to debate about the number of Weems' criminal convictions (one) and there is a debate about the number of Weems' criminal violations (allegedly seven). *See infra.* But two realities more than make up for these inefficiencies: The words of the statute require us to undertake the work, and child abuse injures its victims no less seriously when the conduct does not lead to a successful criminal prosecution than when it does.

Even if each predicate violation does not require an associated criminal conviction, Weems argues that J.W. did not present sufficient evidence to establish seven different violations of § 2251(a). The record shows otherwise. Through an affidavit, Detective Mike Fincher, the investigator in Weems' criminal case, said that he saw "seven movie[s] . . . on Stanley Weems' cellular phone that contained images of the minor child, [J.W.] . . . having sexual intercourse with prostitutes at Stanley Weems' residence." R. 30-1 at 1. No evidence contradicts this statement. On this record, J.W. has shown seven violations of a qualifying criminal statute. *See United States v. Esch*, 832 F.2d 531, 542 (10th Cir. 1987).

*Damages.* That is just half of the problem presented by this appeal—and the easier half at that. Although J.W. has established seven violations of a child-abuse statute, does that entitle him to seven $150,000 presumed-damages awards or just one such award? Put another way, does § 2255 authorize presumptive damage awards of $150,000 *per violation* or $150,000 *per lawsuit*?

In our view, the presumptive-damages provision applies on a per-lawsuit basis. *First*, the terms of the statute together with the general prohibition against splitting causes of action favor this interpretation. In full, the statute reads:

> **a) In General.**—Any person who, while a minor, was a victim of a violation of section 1589, 1590, 1591, 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423 of this title and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains and the cost of the suit, including a reasonable attorney's fee. Any person as described in the preceding sentence shall be deemed to have sustained damages of no less than $150,000 in value.
>
> **b) Statute of Limitations.**—Any action commenced under this section shall be barred unless the complaint is filed within 10 years after the right of action first accrues or in the case of a person under a legal disability, not later than three years after the disability.

Section 2255(a)'s two sentences contain two basic thoughts when it comes to this issue. After describing the violations of the relevant statutes that may cause a "personal injury," the first sentence gives the victim a right of action to "recover the actual damages" caused by the violations. The second sentence gives the victim the option of presumed damages, saying that the victim "shall be deemed to have sustained damages of no less than $150,000." Missing from the second sentence is any indication that the $150,000 threshold applies on a per-violation basis. That omission is noteworthy because, when the statute was first enacted in 1986, claimants generally were not permitted to "split a cause of action and bring separate suits upon its parts." *Rodman v. Rogers*, 109 F.2d 520, 522 (6th Cir. 1940); *see also Baltimore Steamship Co. v. Phillips*, 274 U.S. 316, 319–20 (1927). The same remains true today. *See Ventas, Inc. v. HCP, Inc.*, 647 F.3d 291, 303–04 (6th Cir. 2011). We presume that Congress drafts laws "in light of . . . background principle[s]," not in spite of them. *Cf. Young v. United States*, 535 U.S. 43, 49-50 (2002). Thus, when the first sentence of § 2255(a) empowers the victim to "sue" to recover

"actual damages," it is fair to presume that Congress is talking about all "actual damages" suffered to date by this victim as a result of all violations of the relevant statutes by this defendant, not one such violation or some such violations. Otherwise, the statute would permit, indeed endorse, claim splitting. Once one accepts that the first sentence contemplates a lawsuit involving all existing actual damages from federal violations suffered by one victim at the hands of a given defendant, the second sentence's reference to presumed "damages of no less than $150,000" must refer to a substitute measure of damages for the "person" entitled to bring the actual-damages lawsuit. That is the import of the beginning of the second sentence—that "[a]ny person as described in the preceding sentence" may seek presumed damages. The upshot is that the same person may seek all actual damages for any federal violations to date or $150,000 as a substitute for them.

*Second*, Congress well knew how to write a statute awarding damages on a per-violation basis but chose not to do so here. Many federal statutes award damages based on "each violation" shown. *See, e.g.,* 17 U.S.C. § 1009(d)(1)(B)(i) (Audio Home Recording Act) ("A complaining party may recover an award of statutory damages *for each violation . . .* in the sum of not more than $2,500 per device involved in such violation."); 17 U.S.C. § 1009(d)(1)(B)(ii) (Audio Home Recording Act) ("A complaining party may recover an award of statutory damages *for each violation . . .* in the sum of not more than $25 per digital musical recording involved in such violation."); 17 U.S.C. § 1203(c)(3) (Digital Millennium Copyright Act) ("[A] complaining party may elect to recover an award of statutory damages *for each violation* [of the statute] in the sum of not less than $200 or more than $2,500 per act of circumvention, device, product, component, offer, or performance of service."); 18 U.S.C. § 248(c)(1)(B) (Freedom of Access to Clinic Entrances Act) ("In any action . . . the plaintiff may elect . . . to recover, in lieu of actual damages, an award of statutory damages in the amount of $5,000 *per violation*."); 18 U.S.C. § 1388(d)(2),(4) (Respect for the Funerals of Fallen Heroes Act) ("A person bringing an action under [this statute] may elect . . . to recover the actual damages suffered by him or her as a result of the violation or . . . an award of statutory damages *for each violation* involved in the action . . . in a sum of not less than $25,000 or more than $50,000 *per violation*."); 29 U.S.C. § 1854(e) (Migrant and Seasonal Agricultural Worker Protection Act) ("[I]n an action . . . in which a claim for actual damages is precluded . . . [for certain violations] the court shall award not more than

$10,000 *per plaintiff per violation.*"); 38 U.S.C. § 2413(d)(2),(4) (Respect for America's Fallen Heroes Act) ("A person bringing an action under [this statute] may elect . . . to recover the actual damages suffered by him or her as a result of the violation or . . . an award of statutory damages *for each violation* involved in the action . . . in a sum of not less than $25,000 or more than $50,000 *per violation.*"); 47 U.S.C. § 605(e)(3)(C)(i) (Communications Act) ("[T]he party aggrieved may recover the actual damages suffered by him as a result of the violation . . . [or] an award of statutory damages *for each violation* . . . involved in the action in a sum of not less than $1,000 or more than $10,000.").

Omitting a phrase from one statute that Congress has used in another statute with a similar purpose "virtually commands the . . . inference" that the two have different meanings. *United States v. Ressam*, 553 U.S. 272, 276–77 (2008). When Congress opts not to include a well known and frequently used approach in drafting a statute, the courts should hesitate to pencil it back in under the guise of interpretation. *See Dean v. United States*, 556 U.S. 568, 572 (2009).

*Third,* Congress's decision not to use the familiar "each violation" language in § 2255 is all the more conspicuous when one considers some of the oddities that arise from converting its silence into a statutory directive. If we adopted a per-violation measure of damages, as the government points out in its helpful amicus brief, the differing scopes of the predicate offenses in § 2255 would create anomalous award disparities. Compare a child-sex-trafficking victim who is forced to perform various commercial sex acts over a period of years and a child-pornography victim who is forced to pose for twenty pictures in a day. While the sex-trafficking victim could show just a single violation (and collect only $150,000 in presumed damages), the child-pornography victim could collect $3 million ($150,000 multiplied by twenty violations). *Compare United States v. Garcia-Gonzalez*, 714 F.3d 306, 311–14 (5th Cir. 2013) (measuring the number of violations of 18 U.S.C. § 1591 by the number of victims even though some victims performed multiple commercial sex acts), *and United States v. Brooks*, 610 F.3d 1186, 1192 (9th Cir. 2010) (noting a single violation of 18 U.S.C. § 1591 despite multiple sex acts by the same victim), *with Esch*, 832 F.2d at 534, 541–42 (holding that the defendant could be charged with fourteen violations of 18 U.S.C. § 2251(a)—one for each picture taken—even

though all "depicted the same two children and were produced in the same photographing session").

Or compare a defendant who sends 100 pornographic images of a child in a single email with a defendant who sends 100 emails that each contain only one such image. While the former victim's presumed damages would be limited to $150,000 for a single child-pornography-transportation offense, the latter victim could collect $15 million for the same harm. *See United States v. Gallardo*, 915 F.2d 149, 151 (5th Cir. 1990) (holding that the number of envelopes mailed determines the number of child-pornography-transportation violations under 18 U.S.C. § 2252(a) and thus "[t]he number of photographs in each envelope is irrelevant"). When a statute contains some ambiguity, as this one does, we should not construe it in a way that "tag[s]" Congress with "a taste for the bizarre." *Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 193, 201 (2000).

No doubt, victims of multiple violations in some instances may suffer greater damages than victims of a single violation. Take the child-pornography victim known as Amy. Widespread dissemination of images depicting Amy's childhood abuse has caused her to suffer upwards of $3 million in actual damages. *In re Amy Unknown*, 701 F.3d 749, 752–53 n.3 (5th Cir. 2012) (en banc), *cert. granted sub nom. Paroline v. United States*, 133 S. Ct. 2886 (2013). How, one might wonder, will a per-lawsuit interpretation of the presumed-damages portion of § 2255 account for these cases of extreme harm resulting from numerous violations? To the extent different defendants commit qualifying violations, separate actions and separate damage awards against each defendant may help. Restatement (Second) of Judgments § 34(3). But where only one defendant causes the harm, the short answer is: A per-lawsuit interpretation of the presumed damages provision won't help such victims. But the reality is that it does not need to because another part of the statute—the alternative actual-damages option—does the trick. The $150,000-presumed-damages provision in § 2255(a) creates a floor, not a ceiling. Any victim who proves that her damages against a single defendant exceed the statutory floor will recover the full extent of the damages she suffered, not a penny less. The $150,000 measure of damages assists only victims who have difficulty proving actual damages; it never caps damages for victims who show harm worth more than $150,000.

The reader might worry that a victim of multiple violations by the same defendant could circumvent our decision by filing a separate complaint for damages for each violation under § 2255. There is no reason to worry for a reason alluded to at the beginning of this analysis: Traditional prohibitions on claim splitting would stand in the way. The doctrine of res judicata or, in modern parlance, claim preclusion prevents a party from re-litigating a cause of action already decided. *See Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918 F.2d 658, 660 (6th Cir. 1990). The limitation applies not only to claims and defenses actually raised in the prior proceeding, but also to those claims or defenses "that should have been raised, but w[ere] not." *Id.* at 661. The rule prevents a plaintiff from "splitting a cause of action" into separate lawsuits and requires him to litigate all the claims he can raise in one case. *Id.*; *see also* Restatement (Second) of Judgments § 24(1) (1982) ("[T]he claim [precluded] includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose."). The rule of course has exceptions but none that would apply here in light of the arguments made by the parties. *See, e.g.*, Restatement (Second) of Judgments § 26(1)(c) (Claims or theories not raised will not be precluded if the plaintiff "was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts.").

As for J.W., he did not bring separate lawsuits for each alleged federal violation. Nor could he have done so given that all of his federal claims arose out of the same unbroken chain of events from 2007 to 2011. J.W. thus has a single cause of action for damages under § 2255. Since J.W. did not offer any proof of actual damages exceeding the $150,000 floor, that floor became his presumptive award. Accordingly, the district court's presumed-damages award for $1 million must be vacated, and the case remanded. On remand, the district court may decide whether J.W. has forfeited any argument that his actual damages exceed $150,000 and, if he has not, whether to allow the parties the opportunity to offer proof of J.W.'s actual damages.

IV.

For these reasons, we reverse and remand.