RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0288p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

ANDREW AVERETT, M.D., et al.,

　　　　　　*Plaintiffs-Appellees*,

　　*v.*

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN
SERVICES, et al.,

　　　　　　*Defendants-Appellants*.

┐
│
│
│
│
> No. 18-5595
│
│
│
│
┘

───────────────

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:16-cv-02815—Matthew F. Leitman, District Judge.

Argued:  March 21, 2019

Decided and Filed:  November 25, 2019

Before:  GRIFFIN, KETHLEDGE, and THAPAR, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ARGUED:**  Laura E. Myron, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellants.  Michael A. Cottone, BASS, BERRY & SIMS, PLC, Nashville, Tennessee, for Appellees.  **ON BRIEF:**  Laura E. Myron, Mark B. Stern, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellants.  Michael A. Cottone, David A. King, David R. Esquivel, BASS, BERRY & SIMS, PLC, Nashville, Tennessee, for Appellees.

───────────────

## OPINION

───────────────

　　KETHLEDGE, Circuit Judge.  A statute's terms are not ambiguous simply because the statute itself does not define them.  Here, the Centers for Medicare and Medicaid Services

interpreted the same phrase—"a physician with a primary specialty designation"—to have very different meanings in parallel provisions of the Affordable Care Act. The agency did so not because of any difference in context between the two provisions—instead their context is identical—but rather because the agency thought the different meanings made good policy sense. One of those meanings closely tracked the statute's terms; the other, set forth in the agency's "Final Medicaid Payment Rule," assuredly did not. The plaintiffs here—all physicians— challenged that rule after the Tennessee Medicaid agency invoked it in an effort to "recoup" some $2.3 million in payments to them. In a carefully reasoned opinion, the district court granted summary judgment to the plaintiffs and declared the rule invalid. We affirm.

I.

A.

The Medicare program is funded and administered by the federal government; the Medicaid program is funded largely by the federal government but administered primarily by the states. In 1996, Congress directed the Secretary of Health and Human Services to create a "standard unique health identifier" for each "health care provider" participating in the Medicare and Medicaid programs and to "take into account" each provider's "specialty classifications." 42 U.S.C. § 1320d-2(b). Accordingly, at the time relevant here, the Secretary required Medicare and Medicaid providers to complete a "National Provider Identifier" form that required providers to designate their "primary specialty." *See* Form CMS-10114 (11/08) at 1–2. Medicare providers also completed a form that required them to "designate [their] primary specialty[.]" *See* CMS-855I (02/08) at 8. Medicaid providers likewise designated their primary specialties through "self-attestation" during most if not all states' enrollment processes. *See* 77 Fed. Reg. 66,673–75 (Nov. 6, 2012).

Congress enacted the Affordable Care Act in 2010. The Act provided for a temporary increase in payments to certain physicians who provided primary-care services to Medicare and Medicaid patients. To have been eligible for increased payments for those services under Medicare, a physician must have had "a primary specialty designation" of certain primary-care services (for example, "family medicine" or "internal medicine"). 42 U.S.C. § 1395l(x).

The Medicare provision also required physicians to attest that primary-care services "accounted for at least 60 percent" of their recent billings under Medicare. *Id.* To be eligible for increased payments under Medicaid, however, the Act required a physician only to have "a primary specialty designation" of one of those same primary-care services (except that "geriatric medicine" was not among the specialties listed for the Medicaid provision). 42 U.S.C. § 1396a(a).

In 2012, the Centers for Medicare and Medicaid Services (an agency within HHS) promulgated its "Final Medicare Payment Rule," which without much fuss said that physicians who met the criteria specified in § 1395l(x) were eligible for increased payments under the Medicare provision. Specifically, the agency interpreted the phrase "a physician . . . who has a primary specialty designation" to refer simply to physicians who had "[e]nrolled in Medicare with a primary specialty designation" of one of specialties recited in § 1395l(x)(2)(A)(i)(I); and, per the terms of subsection (II) of that provision, the rule otherwise required that "at least 60 percent" of the physician's recent billings to Medicare had been "for" those designated services. 42 C.F.R. § 414.80(a)(i).

But the agency gave an altogether different meaning to the phrase "a physician with a primary specialty designation" as used in the Medicaid provision. Specifically, in its "Final Medicaid Payment Rule," the agency did not—as it did in the Final Medicare Payment Rule— interpret that phrase to refer simply to physicians who had designated, as their primary specialty, one of the specialties recited in § 1396a(a). Instead, the rule also required the physician to show that (1) she was "Board certified" in that specialty or that (2) 60 percent of her recent Medicaid billings were for certain primary-care services (the "60-percent" or "60-percent-of-billings" requirement). 42 C.F.R. § 447.400(a).

B.

The plaintiffs in this case are 21 physicians who practice family medicine in Tennessee, mostly in rural areas, and who received increased payments in 2013 and 2014 under the Medicaid provision described above. But in 2015 Tennessee's Medicaid agency, TennCare, brought an administrative action to "recoup" about $2.3 million of those payments—an average

of more than $100,000 per physician.  As grounds for the recoupment, TennCare alleged that the physicians had not met the 60-percent requirement of the Final Medicaid Payment Rule.  The physicians then brought this lawsuit in federal court, seeking both a declaration that the 60-percent requirement is contrary to the terms of the Medicaid provision, and an injunction barring the requirement's enforcement against them.  The district court granted summary judgment to the physicians, declared the Final Medicaid Payment Rule invalid, and enjoined the defendants from enforcing that rule against them.  This appeal followed.

II.

We review the district court's decision de novo.  *See McMullen v. Meijer, Inc.*, 355 F.3d 485, 489 (6th Cir. 2004) (per curiam).

The statutory provision at issue states as follows:

> [A state plan for medical assistance must provide] payment for primary care services . . . furnished in 2013 and 2014 by *a physician with a primary specialty designation* of family medicine, general internal medicine, or pediatric medicine at a rate not less than 100 percent of the payment rate that applies to such services and physician under part B of subchapter XVIII . . . .

42 U.S.C. § 1396a(a)(13)(C) (emphasis added).  The question presented is whether, in the Final Medicaid Payment Rule, the agency correctly interpreted the phrase "primary specialty designation" as used in § 1396a(a), to mandate not only that the physician have the requisite designation of primary specialty, but also that the physician either be board-certified in that specialty or satisfy the 60-percent-of-billings requirement.  *See* 42 C.F.R. § 447.400(a).

As an initial matter, we address briefly the agency's argument—made without a single citation to precedent—that the district court's decision to invalidate the Final Medicaid Payment Rule is reversible on the ground that it does not "redress the plaintiffs' injury."  Gov't Br. at 16. Specifically, the agency says, "invalidation of the regulation does not establish that plaintiffs are entitled to keep the enhanced payments they received pursuant to the regulation."  *Id.*  We set aside the question whether this argument is about standing or some other doctrine; for in any event the argument is meritless.  The argument's very terms reflect the agency's mistaken view of its place in this statutory scheme—a view that pervades this appeal.  The physicians did not

receive increased payments "pursuant to the regulation"—the agency obviously lacked authority to increase them on its own—but instead received them pursuant to *an act of Congress*, specifically the provision codified at 42 U.S.C. § 1396a(a). More to the point, this suit is not so much about whether these doctors are "entitled to keep" monies paid to them years ago, as about whether the government is entitled to take those monies away. The payments at issue have been the plaintiffs' property for years; the Tennessee Medicaid agency sought to deprive the plaintiffs of that property solely by means of enforcing the Final Medicaid Payment Rule; and the district court prevented that deprivation by invalidating the rule and enjoining its enforcement against them. Hence the court's decision redressed the imminent injury of which the plaintiffs complained. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185–86 (2000).

As for the merits, we begin by asking whether, "employing traditional tools of statutory construction," Congress has already answered the question presented—in the statute itself. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 & n.9 (1984). If so, "that is the end of the matter." *Id.* at 842.

Here, nobody disputes the meaning of "primary specialty"; that term simply refers to the physician's principal area of practice or expertise. Nor is the meaning of "designate" hard to discern; in the sense employed here, it simply means "[t]o indicate or specify; point out." *See, e.g.*, *The American Heritage Dictionary* 506 (3d ed. 1992). Again nobody argues otherwise.

That leaves the question of who must do the designating. As to this question too there is not much dispute: in the relevant Medicare provision of the Affordable Care Act, as discussed above, Congress used precisely the same term—"primary specialty designation"—in precisely the same context of providing a temporary bump in payments to primary-care providers. *See* 42 U.S.C. § 1395l(x). And CMS interpreted that term to refer simply to the physician's own designation, as her primary specialty, of one of the specialties recited in that Medicare provision. *See* 42 C.F.R. § 414.80(a)(i)(A). That interpretation makes perfect sense, given the apparently uniform practice of physician self-designation under Medicare and Medicaid. Meanwhile, "[a] standard principle of statutory construction provides that identical words and phrases within

the same statute should normally be given the same meaning." *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232 (2007); *see also, e.g.*, *Erlenbaugh v. United States*, 409 U.S. 239, 243 (1972) ("a legislative body generally uses a particular word with a consistent meaning in a given context"). Absent some good reason to conclude otherwise, therefore, the term "primary specialty designation" as used in § 1396a(a)(13)(C) (the relevant Medicaid provision of the Affordable Care Act) means the same thing that it means in § 1395l(x)(2)(A)(i)(I) (the relevant Medicare provision).

We see no reason to conclude otherwise. As an initial matter, nobody assigns any significance to the fact that, for technical reasons, the relevant Medicare and Medicaid provisions of the Affordable Care Act were enacted in separate bills passed four days apart. Nor does the agency offer any actual interpretation of the statute in support of its reading of "primary specialty designation" as used in § 1396a(a)(13)(C). To the contrary, in both the Federal Register and in its briefs to this court, the agency does not offer so much as a dictionary definition in support of its interpretation of "primary specialty designation" as used in the Medicaid provision. Indeed, so far as we can tell, the agency does not employ a single "tool[] of statutory construction," *Chevron*, 467 U.S. at 463 n.9, in support of its construction of the statute here.

Instead the agency offers only policy arguments. CMS argues as follows: "Congress did not define 'primary specialty designation' in either the Medicare or Medicaid" provisions; "[i]t was thus incumbent on the agency to give effect to the limitation of payments to providers with a 'primary specialty designation'"; and CMS did so by reading that term to mean one thing in the Medicare provision and a different, much more restrictive thing in the Medicaid provision. Gov't Br. at 20–21. (The agency based that more restrictive interpretation upon a perceived need to "verif[y]" the physician's designation of her specialty. 77 Fed. Reg. 66,674.) But the Medicare and Medicaid provisions are not merely starting points, from which the agency can then make the real policy choices. "Statutes are instead *law*, which are bounded in a meaningful sense by the words that Congress chose in enacting them." *United States v. Hughes*, 733 F.3d 642, 646 (6th Cir. 2013) (emphasis added). The agency is seriously mistaken, therefore, to assert that "the statute . . . imposed no specific limitations on the agency's authority" to interpret the Medicaid provision as it did. Gov't Br. at 21. The "specific limitations" were the statute's

words themselves.  And here no one (the agency included, as to the Medicare provision) seems to be confused about what they mean.

The actual content of the Final Medicaid Payment Rule only underscores its lack of any statutory basis.  Congress included a 60-percent-of-billings requirement in the Medicare provision (§ 1395l(x)), but chose to omit that requirement from the Medicaid provision (§ 1396a(a)).  "Omitting a phrase from one statute that Congress has used in another statute with a similar purpose 'virtually commands the inference' that the two have different meanings." *Prewett v. Weems*, 749 F.3d 454, 461 (6th Cir. 2014) (ellipses omitted) (quoting *United States v. Ressam*, 553 U.S. 272, 276–77 (2008)).  The "different meanings" here are that—"as a matter of elementary statutory interpretation[,]" *In re United States*, 817 F.3d 953, 964 (6th Cir. 2016)— the Medicare provision (§ 1395l(x)) has a 60-percent-of-billings requirement but the Medicaid provision (§ 1396a(a)) does not.  Yet the agency purported to enforce the 60-percent requirement against Medicaid physicians anyway.  In doing so, the agency overlooked that, "[w]here a statute's language carries a plain meaning, the duty of an administrative agency is to follow its commands as written, not to supplant those commands with others it may prefer." *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1355 (2018); *see also, e.g.*, *Hadden v. United States*, 661 F.3d 298, 303 (6th Cir. 2011) (the question whether "to treat Medicaid [physicians] differently from Medicare ones, is for Congress to decide").

In sum, "whatever its virtues or vices, Congress's prescribed policy here is clear[.]" *Iancu*, 138 S. Ct. at 1358.  There is no 60-percent-of-billings requirement in § 1396a(a).  And the phrase "a physician with a primary specialty designation" means in § 1396a(a) the same thing that the agency said it means in § 1395l(x):  namely, a physician who has himself designated, as his primary specialty, one of the specialties recited in those provisions.  The Medicaid Final Payment Rule is flatly inconsistent with that meaning.  The district court was therefore correct to declare it invalid.

\*        \*        \*

The district court's judgment is affirmed.