[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11547

_____

MSP RECOVERY CLAIMS, SERIES LLC,

MSPA CLAIMS 1, LLC,

MAO-MSO RECOVERY II LLC, SERIES PMPI,

a segregated series of MAO-MSO II LLC,

Plaintiffs-Appellants,

*versus*

METROPOLITAN GENERAL INSURANCE COMPANY,

METROPOLITAN CASUALTY INSURANCE COMPANY,

METROPOLITAN GROUP PROPERTY & CASUALTY
INSURANCE COMPANY,

METLIFE AUTO & HOME GROUP,

METROPOLITAN P&C INSURANCE COMPANY,

Defendants-Appellees.

———————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:20-cv-24052-RNS

———————————

Before JORDAN, LUCK, and LAGOA, Circuit Judges.

LAGOA, Circuit Judge:

This appeal involves claims brought under the private cause of action provided for by the Medicare Secondary Payer Act.  Various actors in the Medicare Advantage program assigned claims for failure to pay or reimburse medical expenses owed under the Medicare Secondary Payer Act to Plaintiffs—MSP Recovery Claims, Series LLC; MSPA Claims 1, LLC; and MAO-MSO Recovery II LLC, Series PMPI, (collectively, "MSP Recovery").  MSP Recovery then asserted those claims against Metropolitan General Insurance Company, Metropolitan Casualty Insurance Company, Metropolitan Group Property & Casualty Insurance Company, Metlife Auto & Home Group, and Metropolitan P&C Insurance Company (collectively, "Defendants").

The district court dismissed MSP Recovery's claims because the complaint failed to show that Defendants had a "demonstrated responsibility" to reimburse MSP Recovery's assignors for the medical expenses at issue.  This appeal asks us to determine whether MSP Recovery's complaint plausibly alleged that

Defendants had a demonstrated responsibility to pay the claims. After careful review, and with the benefit of oral argument, we reverse the district court's decision and remand for further proceedings.

## I.     BACKGROUND

Because this appeal concerns the Medicare Secondary Payer Act, we summarize the Act before addressing MSP Recovery's claims.

### A.  Statutory Framework

Traditional Medicare consists of Parts A and B—the fee-for-service provisions entitling recipients to have Centers for Medicare & Medicaid Services ("CMS") pay providers directly for their medical care. *See* 42 U.S.C. §§ 1395c to 1395i-6, 1395j to 1395w-6. Part C is the Medicare Advantage program, under which Medicare-eligible persons may elect to have a private insurer of the enrollee's choice provide Medicare benefits. *See id.* §§ 1395w-21 to 1395w-28. The insurance companies that provide Medicare benefits under the Medicare Advantage program are called Medicare Advantage Organizations ("MAOs").[1] *See id.* § 1395w-28. Part D provides prescription drug coverage, and Part E contains definitions and

---

[1] The Medicare Advantage program was formerly known as the Medicare+Choice program. *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1235 n.2 (11th Cir. 2016).

exclusions.  One such exclusion is the Medicare Second Payer Act. *Id.* § 1395y(b).

The Medicare Secondary Payer Act (the "MSP Act") was enacted in 1980 to reduce the costs of Medicare. *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1306 (11th Cir. 2006).  More than one insurer is often liable for an individual's medical costs. *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1233 (11th Cir. 2016).  For example, a car accident victim who is covered by Medicare may also be entitled to recover medical expenses under both his own health insurance and the tortfeasor's car insurance policies. To address this overlap in coverage, the MSP Act allocates liability between Medicare and other insurers. *See id.*  The MSP Act uses the term "primary plan" to describe entities with a primary responsibility to pay and defines the term broadly to include "an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance."  42 U.S.C. § 1395y(b)(2)(A).

Before the MSP Act went into effect, "Medicare often acted as a primary insurer; that is, Medicare paid for enrollees' medical expenses, even when an enrollee carried other insurance that covered the same costs, or when a third party had an obligation to pay for them." *MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d 1351, 1354–55 (11th Cir. 2016).  As its name suggests, the Medicare Secondary Payer Act was enacted to ensure Medicare acts as a secondary payer.  "This means that if payment for covered services has been or is reasonably expected to be made by someone else,

Medicare does not have to pay." *Id.* at 1355 (quoting *Cochran v. U.S. Health Care Fin. Admin.*, 291 F.3d 775, 777 (11th Cir. 2002)).

In fact, the MSP Act *prohibits* Medicare from paying for items or services if "payment has been made or can reasonably be expected to be made under . . . an automobile or liability insurance policy or plan (including a self-insured plan) or under no fault insurance." 42 U.S.C. § 1395y(b)(2)(A)(ii). But if a primary plan "has not made or cannot reasonably be expected to make payment with respect to [the] item or service promptly," Medicare may make the initial payment, "conditioned on reimbursement" from the primary plan. *Id.* § 1395y(b)(2)(B)(i). A primary plan must reimburse Medicare for these conditional payments "if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service." *Id.* § 1395y(b)(2)(B)(ii). We refer to this mandate as the "demonstrated responsibility requirement." A primary plan's responsibility for payment may be shown by:

> a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means.

*Id.*

To facilitate recovery of conditional payments, Congress created government and private causes of action for double

damages against primary plans that fail to provide primary payment or appropriate reimbursement. *See id.* §§ 1395y(b)(2)(B)(iii), (b)(3)(A). The private cause of action provision provides:

> There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with [its primary payment obligations].

*Id.* § 1395y(b)(3)(A). We have held that the demonstrated responsibility requirement is a prerequisite to pursuing this private cause of action—a primary plan's responsibility to pay or reimburse Medicare must have been demonstrated in some way before a private plaintiff can sue. *Glover*, 459 F.3d at 1309; *Allstate*, 835 F.3d at 1359.

With this statutory framework in mind, we turn to the factual and procedural background of the case.

## B.  Factual and Procedural Background

The MSP Recovery entities are "collection agencies that specialize in recovering funds on behalf of various actors in the Medicare Advantage system." *See MSP Recovery Claims, Series LLC v. ACE Am. Ins. Co.*, 974 F.3d 1305, 1308 (11th Cir. 2020), *cert. denied*, 141 S. Ct. 2758 (2021). Defendants offer automobile insurance policies that contain no-fault and medical payments coverage for automobile accident-related medical expenses and liability insurance policies.

MSP Recovery filed the instant class action complaint[2] "on behalf of themselves and all others similarly situated." Among other causes of action, MSP Recovery sued Defendants on behalf of themselves and similarly situated entities under the MSP Act's private cause of action provision. The complaint alleged that Defendants are "primary plans" with primary "obligation[s] to pay for accident-related medical expenses on behalf of [e]nrollees." But, according to MSP Recovery, Defendants "systematically failed to make these payments and reimbursements." As a result, MAOs and other downstream actors paid for the relevant accident-related medical expenses and were entitled to, but did not receive, reimbursement from Defendants under the Act. These entities, which we will refer to collectively as MAOs, assigned their claims to MSP Recovery.

MSP Recovery alleged that Defendants had a demonstrated responsibility to reimburse the MAOs in one of two circumstances: (1) where Defendants were contractually obligated to pay for enrollees' accident-related medical expenses under "no-fault" coverage liability policies, or (2) where Defendants entered into settlement agreements with enrollees as a result of claims arising under Defendants' liability insurance policies.

---

[2] After filing its initial complaint, MSP Recovery amended the initial complaint under Federal Rule of Civil Procedure 15(a)(1)(A). We refer to the operative amended complaint as "the complaint" for ease of reference.

According to MSP Recovery, it "identified numerous in-stances where Defendants admitted, by reporting to CMS, that they were obligated (pursuant to no-fault and other liability poli-cies) to provide primary payment on behalf of [e]nrollees." "And in those instances where Defendants reported themselves respon-sible pursuant to 'other liability' policies, they did so as a result of entering into settlement agreements with the Medicare beneficiary at issue." But the complaint itself did not specify these instances. Instead, MSP Recovery attached a "sample list of these instances" to the complaint in "Exhibit A."

Exhibit A contained hundreds of claims assigned to MSP Re-covery. The complaint alleged that MSP Recovery's assignors made conditional payments on behalf of each of these claims and that each payment was "subject to overlapping primary coverage from the Defendants." Exhibit A included the following infor-mation in connection with each of these claims: (1) the beneficiary, identified by the MSP Recovery Member ID; (2) the MSP Recovery assignor that made the conditional payment; (3) the plan with pri-mary responsibility to pay; (4) the insurance policy number; and (5) whether the primary payment obligation arose as a result of a con-tractual obligation or settlement.

The complaint alleged that MSP Recovery identified the claims in Exhibit A by comparing their assignor's claims data against two sets of documents: (1) "Defendants' filings with CMS under 42 U.S.C. § 1395y(b)(7)–(9), which obligates insurers like De-fendants to report the claims for which they are primary payers";

and (2) "certain of Defendants' reported settlements to which [MSP Recovery] had access." (emphasis omitted). MSP Recovery further alleged that Exhibit A "is not complete, and discovery is needed to fully identify the scope of claims, beneficiaries, amounts, and assignors in this case."

Defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), arguing, among other things, that MSP Recovery failed to plausibly allege that Defendants had a demonstrated responsibility to pay the alleged claims under the Act. MSP Recovery opposed Defendants' motion and, in the alternative, requested leave to amend.

The district court granted Defendants' motion to dismiss because it found MSP Recovery failed to sufficiently plead that Defendants had a demonstrated responsibility to pay the alleged claims. Specifically, the district court concluded that (1) it was insufficient for MSP Recovery to include its factual allegations in an exhibit, rather than the complaint itself, and (2) the facts alleged in the complaint were insufficient to survive Defendants' motion to dismiss.

As to the inclusion of Exhibit A, the district court cited its recent decision in *MSP Recovery Claims, Series LLC v. Amerisure Insurance Company*, in which it held that an exhibit attached to a complaint "may not serve as a substitute for factual allegations." No. 17-23961-CIV, 2021 WL 358670, at *3 (S.D. Fla. Feb. 1, 2021). There, the district court stated that it was not enough for an exhibit attached to a complaint to contain exemplars; the complaint itself

had to contain at least "an instance" or "representative example" of the plaintiff's alleged injury. *Id.* The district court held that MSP Recovery's complaint in this action "suffer[ed] from similar pleading deficiencies" and that these deficiencies were "fatal to [MSP Recovery's] claims." As to the adequacy of MSP Recovery's factual allegations, the district court found that the complaint was "completely devoid of non-conclusory factual allegations that would allow the [c]ourt or the Defendants to determine whether [MSP Recovery] ha[d] stated cognizable claims under the MSP [Act], specifically whether [MSP Recovery] ha[d] 'demonstrated' a responsibility by any of the Defendants to make payments under the MSP [Act]." The district court also denied MSP Recovery's request for leave to amend, reasoning that the request was "inserted, as an afterthought, at the end of their opposition to the Defendants' motion" and was thus "procedurally defective and lacking in substantive support."

MSP Recovery filed a motion for reconsideration, which also requested leave to file a second amended complaint. The district court denied MSP Recovery's motion. This timely appeal followed.[3]

---

[3] MSP Recovery appealed both the dismissal order and the order denying its motion for reconsideration. Because we find that the district court erred in dismissing MSP Recovery's claims, however, we need not address MSP Recovery's arguments related to its motion for reconsideration.

21-11547                Opinion of the Court                11

## II.    STANDARD OF REVIEW

We review de novo an order dismissing a complaint under Rule 12(b)(6) accepting all well-pleaded allegations as true and construing the allegations in the light most favorable to the plaintiff. *Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1312 (11th Cir. 2015).

## III.    ANALYSIS

On appeal, MSP Recovery contends that the district court erred in dismissing its complaint because the complaint sufficiently alleged the elements for a private cause of action under the MSP Act, including that Defendants had a demonstrated responsibility to pay its claims. Defendants assert, however, that dismissal was warranted because the two-dismissal rule of Fed. R. Civ. P. 41(a)(1)(B) bars this case.[4] Defendants also argue that dismissal was proper, as to two of the Defendants, because the district court lacked personal jurisdiction over them.

---

[4] Rule 41(a)(1)(A) allows a plaintiff to "dismiss an action without a court order" either by filing "a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment" or by stipulation of the parties who have appeared in the case. "Unless the notice or stipulation states otherwise, the dismissal [will be] without prejudice," except "[i]f the plaintiff previously dismissed any federal- or state-court action based on or including the same claim." Fed. R. Civ. P. 41(a)(1)(B). In that case, a notice of dismissal operates as an adjudication on the merits." *Id.*

Our analysis of the parties' arguments proceeds in two parts. First, we consider whether the district court erred in dismissing MSP Recovery's complaint for failure to state a claim under the MSP Act. Then, we consider Defendants' alternative arguments in support of dismissal.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). Of course, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

"Though the MSP Act as a whole is 'remarkably abstruse,' the private cause of action is remarkably simple." *MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, 1320 (11th Cir. 2019) (quoting *Allstate*, 835 F.3d at 1358). As explained above, the private cause of action allows plaintiffs to recover double damages "in the case of a primary plan which fails to provide for primary payment []or appropriate reimbursement" of conditional payments made by a secondary payer. § 1395y(b)(3)(A).

This Court has distilled the § 1395y(b)(3)(A) private cause of action into three elements. A plaintiff must plead: "(1) the

defendant's status as a primary plan; (2) the defendant's failure to provide for primary payment or appropriate reimbursement; and (3) the damages amount." *Humana*, 832 F.3d at 1239.

Only the second element—the defendant's failure to provide for primary payment or appropriate reimbursement—is at issue in this appeal. As for that element, "the would-be primary payer's responsibility must be 'demonstrated' in some way prior to the suit for reimbursement." *MSPA Claims 1, LLC v. Kingsway Amigo Ins. Co.*, 950 F.3d 764, 771 (11th Cir. 2020). "Until Defendants' responsibility to pay for a Medicare beneficiary's expenses has been demonstrated . . . , Defendants' obligation to reimburse Medicare does not exist," and "it cannot be said that Defendants have 'failed' to provide appropriate reimbursement." *Glover*, 459 F.3d at 1309.

Here, the district court dismissed MSP Recovery's complaint for failing to plausibly allege Defendants had a demonstrated responsibility to pay its claims. According to the district court, Exhibit A could not "serve as a substitute for factual allegations." Additionally, the district court reasoned that the complaint did not include any facts "related to any enrollee, the amount charged to [MSP Recovery's] assignors or amounts they supposedly paid, what exactly such payments were for, what treatment was provided, what exactly was supposedly covered and not paid by Defendants, or what coverage determinations were made by the Defendants." "Absent such information," the district court concluded that the complaint failed "to state cognizable claims."

On appeal, MSP Recovery argues that the district court erred by refusing to consider Exhibit A as part of the complaint and that the complaint, including Exhibit A, stated a claim for relief under the MSP Act. In response, Defendants assert that the district court correctly refused to consider Exhibit A and that their contractual obligations, settlements with beneficiaries, and self-reporting to CMS are insufficient to demonstrate responsibility to pay. We consider these issues in turn.

### 1. The district court erred in failing to consider Exhibit A to the complaint

"In deciding whether a complaint states a claim upon which relief may be granted, we normally consider all documents that are attached to the complaint or incorporated into it by reference." *Gill ex rel. K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019). "The Civil Rules [of Procedure] provide that an attachment to a complaint generally becomes 'part of the pleading for all purposes,' Fed. R. Civ. P. 10(c), including for ruling on a motion to dismiss." *Id.* (collecting cases).

Here, the district court found that it would not consider Exhibit A, which was attached to and referenced by incorporation in the factual allegations of MSP Recovery's complaint. Because "documents attached to a complaint or incorporated in the complaint by reference can generally be considered by a federal court in ruling on a motion to dismiss under Rule 12(b)(6)," *Saunders v Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014), we conclude that the district court erred in failing to consider whether the complaint and

Exhibit A, taken together, plausibly alleged that Defendants' responsibility to pay had been demonstrated prior to suit. *See Humana*, 832 F.3d at 1239.

We now turn to address whether the complaint and Exhibit A taken together plausibly allege that Defendants had a demonstrated responsibility to pay.

### 2.    The demonstrated responsibility standard

As noted, the MSP Act requires a primary plan to reimburse Medicare only "if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service." § 1395y(b)(2)(B)(ii); *see, e.g.*, *Glover*, 459 F.3d at 1308 (emphasis omitted); *Allstate*, 835 F.3d at 1359. And we have explained that "primary payers must have [at least constructive] knowledge that they owed a primary payment before a party can claim double damages under the Medicare Secondary Payer Act." *ACE*, 974 F.3d at 1319.

Plaintiffs can show a primary plan's responsibility to pay has been demonstrated by "a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, *or by other means*." § 1395y(b)(2)(B)(ii) (emphasis added). Our precedent establishes that these "other means" include showing that the primary plan had a contractual obligation to pay or showing that the primary plan entered into a

settlement agreement with a beneficiary. *ACE*, 974 F.3d at 1309, 1319–20.

In *Allstate*, we held that "a plaintiff suing a primary plan under the private cause of action in the MSP Act may satisfy the demonstrated responsibility prerequisite by alleging the existence of a contractual obligation to pay." 835 F.3d at 1362–63. Defendants contend that the following language from *Allstate* requires that, to survive a motion to dismiss, plaintiffs must also allege additional facts showing the contractual obligation "actually render[s] them primarily responsible for the expenses at issue":

> [Our holding] does not relieve Plaintiffs of their burden to allege in their complaints, and then subsequently prove with evidence, that Defendants' valid insurance contracts actually render Defendants responsible for primary payment of the expenses Plaintiffs seek to recover. And Defendants may still assert any valid contract defense in arguing against their liability. We hold only that a contractual obligation may satisfy the demonstrated responsibility requirement, not that the existence of a contractual obligation conclusively demonstrates liability under the MSP Act's private cause of action.

*Id.* at 1361. But this language merely says that, while it is sufficient at the motion to dismiss stage to allege there is a contractual obligation that renders Defendants "responsible for primary payment of the expenses" at issue, plaintiffs will need to later present evidence in support of that allegation.

As to settlement agreements, we have held that a defendant's settlement agreement with a beneficiary can be used to demonstrate responsibility to pay, and knowledge of it. *See Kingsway,* 950 F.3d at 772 ("[Plaintiff] alleges that [defendant's] responsibility has been 'demonstrated' by its settlement of the underlying personal-injury suit . . . . [B]ased on our precedent interpreting the private cause of action, [plaintiff] seems to have done everything it needed to do."); *ACE,* 974 F.3d at 1319 ("Defendants' settlement agreements with beneficiaries show, at a minimum, that Defendants had constructive knowledge that they owed the primary payments.").

And finally, as to defendants' knowledge of their responsibility to pay, this Court has determined that defendants' CMS filings[5] "evidence [d]efendants' knowledge that they owed primary payments." *ACE,* 974 F.3d at 1319. The MSP Act requires certain kinds of insurance plans—including liability and no-fault insurance plans, 42 U.S.C. § 1395y(b)(8)(F)—to "determine whether a claimant (including an individual whose claim is unresolved) is entitled to benefits under the program under this subchapter on any basis," including the Medicare Advantage program. *Id.* § 1395y(b)(8)(A)(i). If the plan determines that the claimant is so entitled, the statute requires that the plan submit a report to the Secretary of the Department of Health and Human Services. *Id.*

---

[5] In *ACE,* this Court referred to the filings required by 42 U.S.C. § 1395y(b)(7)–(9) as "HHS" filings. 974 F.3d at 1319. We use the term "CMS" filings to refer to the same reports to follow the language used by the district court.

§ 1395y(b)(8)(A)(ii).  This report "shall be submitted . . . within a time specified by the Secretary after the claim is resolved through a settlement, judgment, award, or other payment (regardless of whether or not there is a determination or admission of liability)." *Id.* § 1395y(b)(8)(C).  In other words, this provision "obligates insurers like Defendants to report the claims for which they are primary payers." *ACE*, 974 F.3d at 1319.  This Court in *ACE* explained that these filings "evidence Defendants' knowledge that they owed primary payments." *Id.*

In summary, to survive a motion to dismiss on Medicare Secondary Payer Act claims, a plaintiff must plausibly allege that a defendant's responsibility to pay had been demonstrated before filing suit, and a defendant must have (at least constructively) known of such obligation.  A defendant's responsibility can be shown in many ways, including by having a contractual obligation to pay and entering into a settlement agreement with a beneficiary for accident-related medical expenses.  As to the knowledge requirement, a defendant's CMS filings evidence constructive knowledge that the defendant owed primary payments.

With this background in mind, we turn to whether MSP Recovery's complaint plausibly alleged Defendants had a demonstrated responsibility to pay its claims.

MSP Recovery claims that Defendants were required, but failed, to timely reimburse their assignors for conditional payments made in connection with beneficiaries' accident-related medical expenses.  The complaint alleged that MSP Recovery "identified

numerous instances where Defendants admitted, by reporting to CMS, that they were obligated (pursuant to no-fault and other liability policies) to provide primary payment on behalf of [e]nrollees." "And in those instances where Defendants reported themselves responsible pursuant to 'other liability' policies, they did so as a result of entering into settlement agreements with the Medicare beneficiary at issue."

On appeal, MSP Recovery argues that because those instances were too numerous to allege in a complaint, MSP Recovery attached Exhibit A to the complaint, which contained the following information about each claim: (1) the beneficiary, identified by the MSP Recovery Member ID; (2) the MSP Recovery assignor that made the conditional payment; (3) the plan with primary responsibility to pay; (4) the insurance policy number; and (5) whether the primary payment obligation arose as a result of a contractual no-fault obligation or settlement. MSP Recovery identified the claims in Exhibit A by comparing their assignor's claims data against Defendants' filings with CMS, under 42 U.S.C. § 1395y(b)(7)–(9), and "certain of Defendants' reported settlements to which [MSP Recovery] had access."

In other words, MSP Recovery alleged that Defendants had contractual obligations and settlement agreements with beneficiaries that made them responsible to pay for the claims listed in Exhibit A, and that Defendants reported these obligations and settlements to CMS. We hold that, at this stage, MSP Recovery's allegations "satisfy the demonstrated responsibility prerequisite." *See*

*Allstate*, 835 F.3d at 1362–63 (holding "that a plaintiff suing a primary plan under the private cause of action in the MSP Act may satisfy the demonstrated responsibility prerequisite by alleging the existence of a contractual obligation to pay.  A judgment or settlement from a separate proceeding is not necessary"); *Kingsway*, 950 F.3d at 772 (concluding that, when a plaintiff "allege[d] that [defendant's] responsibility has been 'demonstrated' by its settlement" with beneficiaries, it "seem[ed] to have done everything it needed to do" at the motion to dismiss stage); *ACE*, 974 F.3d at 1319 (concluding that plaintiffs "plausibly alleged that Defendants had" actual or constructive knowledge of primary payer responsibility where defendants had reported such responsibility to CMS under § 1395y(b)(7)–(9)).

We do not end our analysis here, however, as Defendants argue that dismissal is still warranted even if MSP Recovery met the demonstrated responsibility requirement.  We address those arguments in turn.

### 3.    Defendants' Alternative Arguments For Dismissal

First, Defendants argue that the two-dismissal rule of Rule 41(a)(1)(B) bars this case because MSP Recovery filed and voluntarily dismissed two substantively identical complaints against Defendants "or their privies."[6]  MSP Recovery responds that, unlike

---

[6] The two cases identified by defendants are: *MSP Recovery Claims v. Metropolitan Casualty Insurance Company*, No. 17-cv-23982-KMW (S.D. Fla.), and

this action, the cases cited by Defendants involved a single plaintiff—MSP Recovery Claims, LLC—and a single defendant—Metropolitan Casualty Insurance Company, and involved "distinct failures to reimburse, deriving from distinct assignment agreements from unrelated Medicare Advantage payors."

Second, Defendants claim the district court lacked personal jurisdiction over two of the Defendants because Metropolitan Group Property and Casualty Insurance Company "does not write insurance in Florida and does not have any automobile insurance policies currently in force there," and MetLife Auto & Home Group does not even exist. MSP Recovery responds that Defendants' CMS reporting undermines their arguments, and any errors in its naming of the Defendants was due to Defendants' sloppy reporting to CMS.

The district court, however, did not address either of these arguments. And we generally "will not consider issues which the district court did not decide." *McKissick v. Busby*, 936 F.2d 520, 522 (11th Cir. 1991); *accord Nyland v. Moore*, 216 F.3d 1264, 1267 (11th Cir. 2000). Because the district court did not address these issues, we decline to do so here in the first instance. *McKissick*, 936 at 522; *Nyland*, 216 F.3d at 1267. On remand, the district court should address, and make the factual findings necessary to

---

*MSP Recovery Claims v. Metropolitan Casualty Insurance Company*, No. 17-cv-23825-DLG (S.D. Fla.).

determine, whether it had personal jurisdiction over the Defendants and whether this case is barred by Rule 41(a)(1)(B).

## IV.  CONCLUSION

For the reasons stated, we hold that at this procedural stage MSP Recovery's complaint plausibly alleged that Defendants had a demonstrated responsibility to pay the claims, and we therefore reverse and remand this case to the district court for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

21-11547                JORDAN, J., Concurring                1

JORDAN, Circuit Judge, Concurring in the Judgment:

I agree that we should reverse, but my reasoning differs from the majority's. In my view, the district court correctly dismissed the plaintiffs' complaint but erred in denying leave to amend. I therefore concur in the judgment.

I'll start with the sufficiency of the first amended complaint. Our cases indicate that an insurer's submission of reports to the government about a claimant's entitlement to Medicare benefits constitutes "evidence" that the insurer knew that it "owed primary payments" under the Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b). *See MSP Recovery Claims, Series LLC v. ACE Am. Ins. Co.*, 974 F.3d 1305, 1319 (11th Cir. 2020). That background principle should have made it fairly easy for the plaintiffs to have drafted a complaint that satisfied Rule 8(a) and stated plausible claims under Rule 12(b)(6).

As the majority notes, documents attached to and incorporated in a complaint must be considered in evaluating sufficiency under Rule 12(b)(6). *See, e.g., Gill ex rel. K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019). But context matters, and here Exhibit A—the critical document attached to the first amended complaint—was not a contract, agreement, claim, letter, or notice with independent legal significance. It was, instead, a chart created by the plaintiffs themselves containing entries for over 1,500 claims. The plaintiffs made general allegations in their complaint that the defendants had a demonstrated responsibility under the MSPA to pay for a number of items or services for certain beneficiaries and

then directed the reader to Exhibit A for *all* of the purported details concerning the defendants' alleged failures. *See, e.g.,* D.E. 10 at ¶¶ 55–56 & n. 9. In drafting their complaint the way they did, the plaintiffs chose not to provide a single exemplar for any of their claims.

Let's assume that Exhibit A could theoretically make up for the first amended complaint's deficient factual allegations and lack of detail. Even so, Exhibit A—which again contained over 1500 entries—failed to give the defendants "fair notice of what the . . . claim[s] [were] and the grounds upon which [they] rest[ed]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted). First, Exhibit A identified the beneficiaries not by name, but by reference to MSP Recovery Member IDs that the defendants would not be privy to or be able to check or reference. Second, Exhibit A listed a "contract" or "plan" number for the beneficiary, but that number could have been a group plan with many members. Third, Exhibit A provided the name and address of the insurer for each beneficiary, but that information would not have helped the defendants figure out what was being alleged as to each beneficiary. Fourth, Exhibit A had a line item for "insurance type," such as "other liability insurance is primary," but without more that would have done little to apprise the defendants of the details concerning their alleged liability under the MSPA. Fifth, Exhibit A had a column for the MSP client/assignor at issue, but again each client/assignor was listed not by name, but by an MSP number not available to the defendants. To make matters

21-11547                    JORDAN, J., Concurring                    3

worse, Exhibit A did not contain any dollar values for any of the claims related to the beneficiaries.  Nor did Exhibit A contain any dates for any of the claims.  These omissions made it even harder to figure out what each defendant's alleged liabilities were based on.

Here, for example, is the very first entry on Exhibit A (with the address of the defendant excluded for space reasons):

| MSP Member Id | Contract/Plan # | Reporting Primary Payer | Insurance Type | MSP Client |
|---|---|---|---|---|
| 5306294-BCBSRI | 6963690070 | Metropolitan Property & Casualty | . . . . other liability insurance . . . | BCBSRI-BCBSRI |

How that entry (and others like it) provided fair notice to Metropolitan Property and Casualty is beyond me.  *See Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (explaining that a complaint is sufficient when it "simply, concisely, and directly" sets out the matters that entitle the plaintiffs to damages from the defendants); 5 Charles Alan Wright, Arthur R. Miller, and A. Benjamin Spencer, Federal Practice and Procedure § 1216 (4th ed. 2021) ("The pleader is entitled to considerable latitude regarding the mode of stating a claim for relief, provided the pleading gives reasonable notice of the claims that are being asserted.").

In a footnote in their complaint, the plaintiffs explained that "[a]dditional information regarding the Medicare beneficiaries referenced in Exhibit A will be made available to [the defendants] upon request," and that such information was "reserved" in order to ensure protection of personal information in "accordance with HIPAA."  D.E. 10 at ¶ 55 n.9.  But that offer, however well-intentioned, could not prop up a deficient complaint.  The adequacy and

sufficiency of a complaint is not determined based on whether the plaintiffs are able to answer basic post-filing questions posed by the defendants. As for the plaintiffs' purported concern about HIPAA, it was unfounded. In their proposed second amended complaint, the plaintiffs set out a number of alleged exemplars and submitted a new chart set containing the names of the beneficiaries and the dates of occurrence or loss. *See* D.E. 39-1 at ¶¶ 54–59, 72–151; D.E. 39-3 (Ex. B to proposed second amended complaint). To avoid any HIPAA problems, the proposed second amended complaint (which would have been filed in the public record) contained redactions, and presumably the unredacted version would have been filed under seal and provided to the defendants. So the HIPAA concerns noted in the first amended complaint were exaggerated and easily resolved when the plaintiffs were faced with dismissal. *See* S.D. Fla. Local Rule 5.4(b).

It seems to me that the plaintiffs, who are "collection agencies" involved in a high-volume aspect of the Medicare industry, *see ACE*, 974 F.3d at 1308, were testing the Rule 8(a)/Rule 12(b)(6) waters to see what they could get away with in terms of pleading detail. The less the plaintiffs have to do to draft a complaint and/or its exhibits, the less they will spend on litigation, and the more they stand to recover if they prevail on their claims. That might be a good business model for the plaintiffs, but it is not one we should countenance.

Because I conclude that the district court correctly dismissed the plaintiffs' first amended complaint, the next question is

21-11547            JORDAN, J., Concurring                    5

whether leave to amend should have been granted. For me, the answer is yes.

The district court, citing to *Newton v. Duke Energy Florida, LLC*, 895 F.3d 1270, 1277 (11th Cir. 2018), denied leave to amend because the plaintiffs had included their request in their motion for reconsideration. *See* D.E. 38 at 4–5. But a closer reading of *Newton* indicates that leave should have been granted. Although *Newton* reaffirmed the rule that a request for leave to amend is not properly raised if embedded in a memorandum in opposition to a motion to dismiss, it also explained that a plaintiff can seek leave to amend in a motion under Rule 59(e) or a motion under Rule 60(b). *See Newton*, 895 F.3d at 1277 (citing *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1075 (11th Cir. 2017)). When the plaintiffs here moved for reconsideration, they did so under Rule 59(e). *See* D.E. 39 at 3. As a result, their request for leave to amend was properly filed.

As noted above, the proposed second amended complaint contained several exemplars. It also set out the names of the beneficiaries and the dates of occurrence or loss in a new chart. Those changes largely remedied the pleading problems I've identified, and as a result the proposed second amended complaint was not legally futile. The plaintiffs should have been granted leave to file it, and I would reverse and remand so that the defendants can respond that that complaint as they see fit.