NOT FOR PUBLICATION

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13740

_____

WILLIAM STILLWELL,

*Plaintiff,*

PENELOPE STILLWELL,
    Individually, and as personal representative of the
    estate of William Stillwell,

*Plaintiff-Appellant,*

*versus*

STATE FARM FIRE & CASUALTY CO.,
MOTORISTS MUTUAL INSURANCE CO.,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:17-cv-01894-SDM-AAS

_____

Before BRANCH, LUCK, and TJOFLAT, Circuit Judges.

LUCK, Circuit Judge:

William and Penelope Stillwell settled their tort claims after a slip-and-fall accident. As part of the settlement, the Stillwells received a lump-sum payment in exchange for their releasing State Farm Fire and Casualty Company and Motorists Mutual Insurance Company from all future liability for the tort claims. Despite the settlement, the Stillwells believed that the insurers had an ongoing responsibility to reimburse Medicare for William's post-settlement accident-related medical expenses. So, Penelope, for herself and on behalf of William's estate, sued the insurers under the Medicare Secondary Payer Act and the False Claims Act, seeking to recoup damages for the government based on the insurers' failure to reimburse Medicare for William's post-settlement medical expenses. The district court dismissed the complaint after concluding that the insurers were not legally responsible for paying for the medical expenses and, therefore, did not have a responsibility to reimburse Medicare for them. After careful review and with the benefit of oral argument, we affirm.

## FACTUAL BACKGROUND

In December 2010, William suffered serious injuries after a slip-and-fall accident at the Sycamore Springs living community in Indianapolis, Indiana. In March 2011, William became eligible for Medicare. As his injuries worsened, he had to amputate his lower left leg.

In 2011, the Stillwells sued the property management company of the living community, the homeowners' association, and the landscaping company for negligence in Indiana state court.

They sought damages for William's past and future medical expenses and Penelope's loss of consortium. State Farm insured the homeowners' association and property management company, and Motorists insured the landscaping company. In 2013, the Center for Medicare and Medicaid Services sent William a letter, informing him that Medicare was notified about his tort suit.

In 2016, the Stillwells agreed to settle their tort claims and signed a "settlement recap," itemizing the amounts to be paid under the settlement. Specifically, the parties agreed that the insurers would pay $200,000 for full settlement of all claims. Notably, $5,000 of that amount came from the insureds' "unused medpay funds," which stemmed from the no-fault insurance coverage under the liability insurance policies. The agreement itemized payments for attorney's fees and costs, private health insurance reimbursement, Medicare reimbursement for conditional payments already paid for pre-settlement accident-related medical expenses, and a lump sum to the Stillwells. The Stillwells signed a memorandum of understanding stating that the case was settled and that the Stillwells would sign releases and dismiss the case after formalizing the settlement agreement. The memorandum was filed in the Indiana trial court.

In December 2016, Medicare sent William another letter. This letter said that Medicare was aware that William settled his tort claim. And the letter explained that the Medicare Secondary Payer Act obligated William to reimburse Medicare for $19,672.99

in pre-settlement accident-related medical expenses once William received the settlement payment.

The insurers sent the Stillwells a check for the full amount and a proposed formal settlement agreement. The proposed formal agreement released the insurers from any further liability, including from William's future medical costs, in return for the lump-sum payment. The proposed agreement also provided that the Stillwells: (1) "ha[d] considered the interests of Medicare"; (2) "ha[d] an obligation to Medicare . . . that an incident was the subject of a settlement"; (3) "ha[d] an obligation to reimburse Medicare . . . for medical services rendered to date in this matter"; and (4) "ha[d] complied with all known obligations pursuant to" federal law. The agreement continued that the Stillwells' "future medical care [would] not be affected by the terms and conditions" of the agreement and that the Stillwells would be responsible for "any existing or future medical lien or liens of any type relating to William Stillwell." But the Stillwells refused to sign the proposed formal agreement because they believed that the insurers had an ongoing obligation to reimburse Medicare for post-settlement accident-related medical expenses.

The insurers moved to enforce the terms of the proposed formal settlement agreement in the Indiana trial court. The Indiana trial court granted the motion and entered judgment enforcing the terms of the proposed settlement agreement. The trial court's judgment found that the "Stillwells [were] jointly and severally liable for payment of any existing or future medical lien . . . relating

to William Stillwell." The judgment showed the insurers had paid what they owed under the settlement agreement, including the $19,672.99 payment to Medicare to reimburse the cost of William's pre-settlement accident-related medical expenses. The Court of Appeals of Indiana affirmed the judgment on appeal.

## PROCEDURAL HISTORY

Soon after the Indiana trial court entered judgment, Penelope sued State Farm and Motorists in federal district court. The complaint asserted two claims under the Medicare Secondary Payer Act and eight claims under the False Claims Act. As to her Medicare Secondary Payer Act claims, Penelope alleged that the insurers failed to reimburse Medicare for thousands of dollars in post-settlement accident-related medical expenses, entitling Penelope to double damages under the Act.

Her eight False Claims Act claims (four claims against each insurer) were based on the assumption that the insurers held primary responsibility to pay for William's post-settlement accident-related medical expenses, meaning William's medical providers should have submitted claims to the insurers and not to Medicare. Specifically, two counts alleged that the insurers caused William's medical providers to submit false claims to Medicare; two counts alleged that the insurers submitted false statements material to his medical providers' false claims to Medicare; two counts alleged that the insurers unlawfully concealed their primary payment responsibility to reduce the amount that had to be reimbursed to Medicare under the Medicare Secondary Payer Act; and the other two counts

alleged that the insurers conspired to commit the other acts of fraud.

The insurers moved to dismiss the complaint for failing to state a claim, arguing that the Medicare Secondary Payer Act and the False Claims Act claims failed because the insurers had no responsibility to pay for William's post-settlement accident-related medical expenses. The district court granted the motions and dismissed the complaint. The district court agreed with the insurers that Penelope's Medicare Secondary Payer Act claims failed because under the settlement agreement the insurers were not responsible to pay for William's post-settlement accident-related medical care expenses and were thus not responsible to reimburse Medicare for those expenses. Because the insurers were not responsible to pay for those expenses or to reimburse Medicare, the district court explained that William's medical providers submitted accurate claims to Medicare, that the insurers did not conceal their obligation to reimburse Medicare for those expenses, and that the insurers did not conspire to defraud the government. So, the district court concluded that Penelope's False Claims Act claims also failed. Penelope appeals the district court's dismissal of her complaint.

## STANDARD OF REVIEW

We review de novo a district court's dismissal for failure to state a claim. *United States ex rel. Lesinksi v. S. Fla. Water Mgmt. Dist.*, 739 F.3d 598, 602 (11th Cir. 2014). False Claims Act claims must be pleaded with particularity under Federal Rule of Civil Procedure

9(b).  *United States ex rel. Clausen v. Lab'y Corp. of Am.*, 290 F.3d 1301, 1309–10 (11th Cir. 2002).

## DISCUSSION

We divide our discussion into two parts.  First, we address the dismissal of Penelope's Medicare Secondary Payer Act claims.  And, then, we consider the dismissal of her False Claims Act claims.

### Medicare Secondary Payer Act Claims

Penelope argues the district court erred in dismissing her Medicare Secondary Payer Act claims because, contrary to what the district court concluded, the insurers were responsible for reimbursing Medicare for William's post-settlement accident-related medical expenses.  We disagree.

As we've explained, the Medicare Secondary Payer Act is not one Act, but instead "a collection of statutory provisions codified during the 1980s with the intention of reducing federal health care costs."  *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 874 (11th Cir. 2003).  Generally, under the Medicare Secondary Payer Act, Medicare should not pay for a beneficiary's medical expenses where a "primary payer"—like a liability insurance plan—is also responsible for those expenses.  *MSP Recovery Claims, Series LLC v. ACE Am. Ins. Co.*, 974 F.3d 1305, 1308 (11th Cir. 2020).  So, "if payment for covered services has been or is reasonably expected to be made by someone else, Medicare does not have to pay."  *MSP Recovery Claims, Series LLC v. Metro. Gen. Ins. Co.*, 40 F.4th 1295, 1299 (11th Cir. 2022) (quoting *MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d

1351, 1355 (11th Cir. 2016)).  "But if a primary plan 'has not made or cannot reasonably be expected to make payment with respect to [the] item or service promptly,' Medicare may make the initial payment, 'conditioned on reimbursement' from the primary plan." *Id.* (quoting 42 U.S.C. § 1395y(b)(2)(B)(i)).

Congress created a private cause of action with double damages "to encourage private parties who are aware of non-payment by primary plans" to enforce Medicare's rights. *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1307 (11th Cir. 2006) (citing 42 U.S.C. § 1395y(b)(3)(A)). As a "prerequisite to pursuing th[e] private cause of action," a plaintiff must demonstrate that the "primary plan has or had a responsibility" to pay the relevant medical expenses. *Metro. Gen. Ins.*, 40 F.4th at 1299 (quoting 42 U.S.C. § 1395y(b)(2)(B)(ii)); *see also Glover*, 459 F.3d at 1309 (explaining that the demonstration of a primary payer's responsibility to pay is "a condition precedent" to its "obligation to reimburse Medicare").

A plaintiff can demonstrate responsibility "by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means." 42 U.S.C. § 1395y(b)(2)(B)(ii). Specifically, in the context of state-law torts, we've said that "[a]fter the Medicare beneficiary obtains a favorable judgment or settlement of state tort claims, Medicare is entitled to reimbursement to the extent of its conditional payments." *Glover*, 459 F.3d at 1309–10. After demonstrating

the primary plan's responsibility, a plaintiff can state a claim under the private cause of action by alleging "(1) the defendant's status as a primary plan; (2) the defendant's failure to provide for primary payment or appropriate reimbursement"; and (3) "damages." *See Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1239 (11th Cir. 2016).

Here, because Penelope cannot show the insurers' responsibility to pay for William's post-settlement accident-related medical expenses, she cannot state a claim under the Medicare Secondary Payer Act's private cause of action. She does not point to a "favorable judgment or settlement" or anything else obligating the insurers to pay for those expenses. *See Glover*, 459 F.3d at 1310. Instead, she relies on the insurers' pre-settlement contracts which made them responsible for William's medical expenses, generally. But the insurers could not have been responsible to make hypothetical and speculative future payment obligations that had not yet been incurred. And the settlement agreement that the Indiana trial court enforced establishes the opposite. It says the Stillwells—not the insurers—are responsible for post-settlement accident-related medical expenses. So, when Medicare paid for William's post-settlement medical expenses, the insurers had no duty to reimburse Medicare. And once the settlement agreement was approved, the insurers no longer had a responsibility to pay for medical expenses. Penelope did. Because Penelope did not demonstrate the insurers' responsibility for the payments, "a prerequisite to pursuing this pri-

vate cause of action," *see Metro. Gen. Ins.*, 40 F.4th at 1299, the district court did not err in dismissing Penelope's Medicare Secondary Payer Act claims.

Penelope offers four counterarguments. First, Penelope contends that the settlement agreement cannot extinguish the insurers' responsibility to reimburse Medicare for William's post-settlement accident-related medical expenses. Instead, she contends that the settlement agreement showed that the insurers "had a responsibility"—before the settlement—to pay for those expenses. *See* 42 U.S.C. § 1395y(b)(2)(B)(ii). And because the settlement shows the insurers, at one point, had a responsibility to make payment, Penelope argues she has satisfied the statutory prerequisite to sue under the private cause of action.

But this misreads the Medicare Secondary Payer Act's use of the word "had." It is not enough to show that, pre-settlement, the insurers had a responsibility for William's accident-related medical expenses. Rather, the settlement must demonstrate that the insurers "had a responsibility" for a "payment made by the Secretary under this subchapter." *See* 42 U.S.C. § 1395y(b)(2)(B)(ii). That is, the insurers must have "had" a responsibility for a payment at the time that payment was made by Medicare. It is not sufficient to point to a speculative and general future responsibility for hypothetical expenses that have not yet occurred. Penelope could show that responsibility by a "favorable judgment"—saying the insurers were responsible for payments Medicare made—or by a settlement

agreement to the same effect. *See Glover*, 459 F.3d at 1309–10. Indeed, the settlement agreement here did show that the insurers had a responsibility for William's pre-settlement medical expenses, and the insurers appropriately reimbursed Medicare for its payment of those expenses. But the settlement agreement also clearly established that the insurers had no responsibility for William's accident-related medical expenses going forward. As to any medical expenses incurred after the settlement, the insurers never "had" a responsibility to pay. So, the settlement agreement undermines any attempt to demonstrate that the insurers had a responsibility for any payment Medicare made for William's post-settlement accident-related medical expenses.

Second, Penelope asserts that our decision in *Humana* and the Sixth Circuit's decision in *Hadden v. United States*, 661 F.3d 298 (6th Cir. 2011), support her position that the settlement agreement couldn't extinguish the insurers' responsibility to reimburse Medicare for William's post-settlement accident-related medical expenses. For the same proposition, she also cites Medicare's regulation stating that reimbursement to Medicare is still required "even though [the primary payer] has already reimbursed the beneficiary." 42 C.F.R. § 411.24(i)(1).

But the cases and regulation Penelope cites only apply where the liability insurer was responsible to make payment for pre-settlement medical expenses that Medicare already conditionally paid for. For example, in *Humana*, a liability insurer issued a lump-sum settlement payment to a tort plaintiff but failed to reimburse the

tort plaintiff's Medicare Advantage insurer—a private insurer who contracts with the government to provide Medicare benefits—for pre-settlement accident-related expenses.  832 F.3d at 1231–32. Even though the liability insurer had already issued the lump-sum payment, we explained that the liability insurer still had a reimbursement responsibility because the liability insurer had a responsibility to make payment for the pre-settlement expenses that the Medicare Advantage insurer conditionally paid for.  *Id*. at 1239–40.

Similarly, in *Hadden*, the Sixth Circuit concluded that a plaintiff was responsible to reimburse Medicare because the tort plaintiff received a lump-sum settlement payment from a liability insurer but failed to use those proceeds to reimburse Medicare for pre-settlement accident-related medical expenses.  661 F.3d at 300–03. There, the Sixth Circuit explained that the plaintiff's reimbursement responsibility arose because the liability insurer's settlement payment demonstrated that it was responsible for the plaintiff's pre-settlement accident-related expenses that Medicare conditionally paid for.  *See id*. at 302–03.

The Medicare regulation is consistent with *Humana* and *Hadden*.  It provides that when a liability insurer has a demonstrated responsibility to make payment for pre-settlement medical expenses that Medicare already paid for, the responsibility to reimburse Medicare survives post-settlement.  *See* 42 C.F.R. § 411.24(i)(1); *Humana*, 832 F.3d at 1239–40; *Hadden*, 661 F.3d at 302–03.  But the Medicare regulation, and *Humana* and *Hadden*, do not apply here because the insurers already reimbursed Medicare

for the pre-settlement medical expenses.  They say nothing about the obligation for post-settlement medical expenses that the beneficiary incurred after the settlement agreement cuts off the insurers' responsibility.

Third, Penelope maintains that Medicare's regulations for workers'-compensation settlements also apply to tort-liability settlements, even though Medicare has not issued similar regulations for tort-liability settlements.  *See* 42 C.F.R. §§ 411.40–47.  Because Medicare "will not . . . recognize[]" a workers'-compensation settlement that fails to account for Medicare's interest in not paying for future work-related medical expenses, Penelope argues that Medicare would not recognize the insurers' settlement here because it impermissibly "shift[ed] to Medicare the responsibility" to pay for William's post-settlement accident-related medical expenses.  *See* 42 C.F.R. § 411.46(a)–(b).

But this argument fails for two reasons.  One reason is that workers- compensation liability is fundamentally different than traditional tort liability.  We decline to shoehorn tort liability settlements into a fundamentally different regulatory framework of another area of the law.  The other reason is that, even if they did apply, the workers'-compensation regulations would not require the insurers to reimburse Medicare.  The regulations say only that Medicare "will not pay for treatment of" the accident-related condition, not that Medicare can seek reimbursement for post-settlement accident-related expenses it has already paid.  42 C.F.R. § 411.46(b)(2).

Last, Penelope argues that the no-fault-insurance provisions in the insurers' liability-insurance policies, which covered medical expenses for injuries on the insured's premises regardless of fault, demonstrated the insurers' responsibility to pay William's post-settlement accident-related medical expenses and reimburse Medicare for those expenses. But this argument, again, misunderstands the scope of the insurers' responsibility to reimburse Medicare. Once the insurers provided the Stillwells a lump sum in exchange for a release of all their claims—and reimbursed Medicare for William's past medical expenses—the insurers were no longer responsible to pay for William's medical expenses under any provision of the liability insurance policies. At that point, the insurers no longer "ha[ve] or had" a responsibility under the plan to pay for William's medical expenses. *See* 42 U.S.C. § 1395y(b)(2)(B)(ii); *see also* 42 C.F.R. § 411.21. Without a responsible primary plan, the insurers were not primary payers responsible to reimburse Medicare for those expenses. *See* 42 U.S.C. § 1395y(b)(2)(B)(ii).

### *False Claims Act Claims*

To be liable under the False Claims Act, a plaintiff must, at a minimum, allege that the defendant acted in a way to defraud the government. *See* 31 U.S.C. § 3729(a)(1). Those allegations could include knowingly causing a false claim to be submitted to the government, *id.* § 3729(a)(1)(A); knowingly submitting a false statement that is material to a false claim to the government, *id.* § 3729(a)(1)(B); knowingly concealing or avoiding an obligation to

pay the government, *id*. § 3729(a)(1)(G); and conspiring to do any of these acts of fraud, *id*. § 3729(a)(1)(C).

Here, Penelope asserted eight False Claims Act violations by the insurers. All of her claims under the Act assumed that the insurers had a primary payment responsibility for William's post-settlement accident-related medical expenses. Specifically, two claims alleged that the insurers were liable under the Act for causing William's medical providers to submit false claims to Medicare for those expenses; two claims alleged that the insurers were liable for submitting false statements material to William's medical providers' false claims to Medicare; two claims alleged that the insurers were liable for concealing their obligation to reimburse Medicare for William's post-settlement accident-related medical expenses; and two claims alleged that the insurers were liable for conspiring with each other to commit the other acts of fraud against the government.

Because each of Penelope's False Claims Act claims was based on the insurers' responsibility to pay for William's post-settlement accident-related medical expenses, they fail for the same reason her Medicare Secondary Payer Act claims do. As we explained above, the insurers had no responsibility to pay for William's post-settlement accident-related medical expenses. Based on that conclusion, none of the insurers' alleged actions violate the False Claims Act. William's medical providers' claims to Medicare were accurate, and the insurers did not conceal an obligation to re-

imburse Medicare for post-settlement accident-related medical expenses because they had no such obligation. So, the district court did not err in dismissing Penelope's False Claims Act suit.

In response, Penelope argues that the insurers' failure to report the settlement agreement to Medicare caused it to pay false claims, so the district court shouldn't have dismissed her False Claims Act counts. Under her theory, if the insurers had reported the settlement to Medicare then Medicare would not have improperly paid William's post-settlement accident-related medical costs. But this theory fails for two reasons. First, Medicare's letter attached to the amended complaint shows that, in fact, the settlement agreement was reported to Medicare. It stated that Medicare was notified about the settlement agreement and provided the precise amount that William owed Medicare for pre-settlement medical expenses based on the settlement agreement's terms. Second, even if Medicare had been unaware of the settlement agreement, Penelope's claims would still fail because the insurers had no responsibility to pay for William's post-settlement medical expenses. So, Medicare did not improperly pay those expenses, no false claims were submitted, and the insurers are not liable under the False Claims Act.

## CONCLUSION

The settlement agreement and the Indiana trial court's judgment enforcing that agreement make clear that the insurers did not have a responsibility to pay for William's post-settlement accident-related medical expenses when Medicare paid for those expenses.

21-13740                Opinion of the Court                17

Without establishing the insurers' responsibility to pay for those expenses, Penelope's Medicare Secondary Payer Act claims fail because the insurers had no responsibility to reimburse Medicare for those expenses.  And her False Claims Act claims also fail because William's medical providers did not submit false claims to Medicare for his post-settlement medical expenses and the insurers did not conceal any obligation to reimburse Medicare for those expenses.  So, the district court did not err in dismissing Penelope's amended complaint.

**AFFIRMED.**

21-13740                 TJOFLAT, J., Concurring                        1

TJOFLAT, Circuit Judge, Concurring:

The threshold question before the District Court in considering whether any of the counts of the Third Amended Complaint (the "Complaint") stated a cause of action was whether the Stillwells, in settling their Indiana tort action, had released State Farm and Motorists Mutual ("Insurers") of all claims the Stillwells might have against Insurers at any time. In their motions to dismiss the Complaint, Insurers argued that the Court of Appeals of Indiana answered this threshold question in their favor when it affirmed the judgment of the Superior Court of Marion County enforcing the settlement.[1] *See Stillwell v. Eagle-Kirkpatrick Mgmt. Co., Inc.*, No. 49A02-1708-CT-1919, 2018 WL 3321281 (Ind. Ct. App. July 6, 2018).

---

[1] The Superior Court entered the following judgment against the Stillwells:

> The Stillwells are jointly and severally liable for payment of any existing or future medical lien or liens of any type relating to William Stillwell and shall defend, indemnify and save harmless the Defendants and their respective insurers, agents, employees, assigns, officers, directors, shareholders, partners, members liable or who might be claimed to be liable from any claim (specifically, any claim by or on behalf of William Stillwell or Penelope Stillwell) brought as a result of any treatment, injuries, or damages, including, but not limited to, attorney fees incurred to defend such claims and all other costs.

*Stillwell v. Eagle-Kirkpatrick Management Co., Inc.*, No. 49D11-1110-CT-041092, 2017 WL 11603259, at *2 (Ind.Super. July 26, 2017).

2                    TJOFLAT, J., Concurring                    21-13740

The Stillwells, however, argued that the settlement was invalid because Insurers fraudulently induced them to agree to it.

The District Court was bound to apply *Stillwell* and dismiss the Complaint if the *Stillwell* judgment was entitled to full faith and credit pursuant to 28 U.S.C. § 1738 *and* it determined that in settling their tort action, the Stillwells released Insurers of all claims they might have against them at any time. I conclude that the *Stillwell* judgment was entitled to full faith and credit and determined that the Stillwells released Insurers of all claims, including those the Complaint presented. The issue preclusion doctrine of collateral estoppel forecloses those claims.

**I.**

The Constitution of the United States provides in Article IV, § 1 that: "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." U.S. Const. art. IV, § 1. The first Congress, in 1790, exercising its authority under the Full Faith and Credit Clause, enacted the Full Faith and Credit Act. Act of May 26, 1790, ch.11, 1 Stat. 122. The current version reads:

> The Acts of the legislature of any State, Territory, or Possession of the United States, or copies thereof, shall be authenticated by affixing the seal of such State, Territory or Possession thereto.

21-13740                TJOFLAT, J., Concurring                3

> The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.
>
> Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

28 U.S.C. § 1738.

Federal courts must inquire into the jurisdictional basis of a state court judgment before according it full faith and credit. *Am. Steel Building Co. v. Davidson & Richardson Constr. Co.*, 847 F.2d 1519 (11th Cir. 1988). Where the state court had subject matter jurisdiction to entertain the action and personal jurisdiction over the parties, its decision must be accorded full faith and credit in the federal court. *Underwriters Nat'l Assurance Co. v. North Carolina Life & Accident & Health Ins. Guaranty Ass'n*, 455 U.S. 691, 706, 102 S. Ct. 1357, 1366 (1982); *Durfee v. Duke*, 375 U.S. 106, 111, 84 S. Ct. 242, 245 (1963); *Harbuck v. Marsh Block & Co.*, 896 F. 2d 1327, 1329 (11th Cir. 1990). However, a state court's determination that it had jurisdiction to entertain the action must also be given full faith and credit.

*See Durfee*, 375 U.S. at 111, 84 S. Ct. at 245 ("[T]here [is a] general rule that a judgment is entitled to full faith and credit—even as to questions of jurisdiction—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment.").

There is no doubt that the Superior Court had subject matter jurisdiction to hear the Stillwells' tort action and their adversaries' motions for the enforcement of the parties' settlement agreement. The Superior Court is a court of general jurisdiction, and it had personal jurisdiction over the parties. Indiana law would therefore accord the judgments of the Superior Court and the Court of Appeals full faith and credit. Therefore, the District Court must as well.

## II.

The question thus becomes whether the *Stillwell* judgment precluded the District Court from entertaining on the merits the issue the Complaint presents: whether Insurers fraudulently induced the Stillwells to settle their tort action and therefore to release Insurers from all past and future claims.

"Issue preclusion," commonly referred to as "collateral estoppel," "bars relitigation of an issue of fact or law that has been decided in a prior suit." *Baloco v. Drummond Co.*, 767 F.3d 1229, 1251 (11th Cir. 2014). Issue preclusion operates across a two-lawsuit continuum. *Graham v. R.J. Reynolds Tobacco Co.*, 857 F.3d 1169, 1214

21-13740                TJOFLAT, J., Concurring                5

(11th Cir. 2017) (Tjoflat, J., dissenting). In the first lawsuit, the parties litigate the dispute to a final judgment on the merits. *Id.* at 1214–15. The court in the first lawsuit is the rendering court. *Id.* at 15. Then, in a later, second lawsuit between the same parties, one party proffers evidence of the earlier judgment and contends that issue preclusion should apply and foreclose the issue's relitigation. *Id.* The court in the second lawsuit is the recognizing court. *Id.*

Recognizing courts apply the issue preclusion law that the rendering court would apply. *See Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 381, 105 S. Ct. 1327, 1332 (1985); 28 U.S.C. § 1738. In the situation here, the *Stillwell* Court is the rendering court, and the District Court is the recognizing court. The District Court must apply Indiana's doctrine of collateral estoppel to determine the preclusive effect, if any, of the *Stillwell* judgment.

Indiana courts apply collateral estoppel when three conditions are satisfied: "(1) a final judgment on the merits in a court of competent jurisdiction; (2) identity of the issues; and (3) the party to be estopped was a party or the privity of a party in the prior action." *Miller v. Patel*, 212 N.E.3d 639, 646 (Ind. 2023) (quoting *Nat'l Wine & Spirits, Inc. v. Ernst & Young, LLP*, 976 N.E.2d 699, 704 (Ind. 2012)). For the second condition, courts ask whether the issue seeking to be precluded in the recognizing court is the same issue necessarily adjudicated in the rendering court. *Nat'l Wine & Spirits*, 976 N.E.2d at 706. Indiana courts consider two additional conditions when determining whether issue preclusion is appropriate:

(4) whether the party against whom collateral estoppel is being asserted had a full and fair opportunity to litigate the issue and (5) whether it would be otherwise unfair under the circumstances to permit the use of collateral estoppel. *Miller*, 212 N.E.3d at 647. The Indiana Supreme Court adopted the Seventh Circuit rule outlined in *Reed v. Illinois*, 808 F.3d 1103 (7th Cir. 2015), regarding "fairness" in defensive issue preclusion. *Miller*, 212 N.E.3d at 654. Unfairness is defined as "deny[ing], without a good reason, a party's right to press a potentially winning argument." *Id.* (quoting *Reed*, 808 F.3d at 1108).

With these principles in hand, the question is whether the Superior Court of Marion County, in enforcing the agreement to settle the Stillwells' tort action, decided the issue of whether Insurers fraudulently induced them to enter into the settlement agreement. The evidence before the Superior Court bearing on the Stillwells' claim of fraud as set out in *Stillwell* established the following:

After his fall on December 13, 2011, William Stillwell filed a tort action against his property manager, homeowners' association, and landscaping company (collectively, the "Defendants") in the Superior Court of Marion County, Indiana. *Stillwell*, 2018 WL 3321281, at *1. After the trial was scheduled, the Stillwells and the Defendants agreed to settle. *Id.* As part of the agreement, the parties signed a memorandum of understanding outlining that the Defendants agreed to collectively pay the Stillwells $200,000 as settle-

ment of all claims and that the parties would work over the subsequent months to resolve issues of possible third-party interests in the settlement. *Id.*

Several months later, the parties had fully worked out the details of the settlement, except for the release of William's future medical expenses. *Id.* The Defendants tendered the settlement checks to the Stillwells. *Id.* Of the $200,000 paid by the Defendants, $19,672.99 was paid to the Center for Medicare and Medicaid Services as reimbursement for the conditional payments Medicare paid for William's medical costs before the settlement and $4,000 was paid to Anthem Blue Cross and Blue Shield to settle a lien for past medical expenses. The Stillwells' lawyer deposited the remainder of the $200,000 settlement into the lawyer's trust account pending disbursement, but the Stillwells refused to sign the release that accompanied the settlement.

In response, the Defendants moved the Superior Court to enforce the settlement, including the release that the Stillwells had previously refused to sign. *Id.* The Superior Court scheduled a hearing, at which the Defendants appeared through counsel and Penelope Stillwell appeared telephonically. *Id.* at *2. After the hearing, the Superior Court granted the Defendants' motion to enforce the settlement, including the provision enforcing the release of future medical expenses. *Id.* A few months later, the Defendants moved the Superior Court to enter judgement enforcing the Superior Court's order. *Id.* The Superior Court held another hearing, at which the Stillwells failed to appear despite being ordered to do so.

*Id.* The Superior Court granted the Defendants' motion and signed an order entering judgment. *Id.*

The Stillwells appealed to the Court of Appeals of Indiana raising the issue of "whether the trial court properly enforced the settlement agreement." *Id.* The Court of Appeals affirmed the Superior Court's judgment, finding that it did not err in finding that an enforceable settlement agreement existed. *Id.* at *3.

It is beyond doubt that the Court of Appeals judgment in *Stillwell* adjudicated the validity of the release the Stillwells gave Insurers and that it foreclosed the claims the Complaint presented. The issue was squarely before the Superior Court and the Court of Appeals. The Stillwells had the opportunity to fully and fairly litigate the issue of the release in the Indiana courts. The Indiana courts ruled against them, and therefore, the District Court was bound to give their determination full faith and credit. For that reason, and the others the District Court articulated, its judgment is due to be affirmed.